

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

CORNING OPTICAL )
COMMUNICATIONS WIRELESS )
LTD., )
 )
        Plaintiff, )
 )
v. )   Civil Action No. 3:14cv367–HEH
 )
SOLID, INC. and REACH )
HOLDINGS, LLC, )
 )
        Defendants. )

### MEMORANDUM OPINION
### (Motion to Transfer)

This matter is before the Court on Defendants' Motion to Transfer (ECF No. 37), filed on July 25, 2014. Plaintiff has filed its response, and this matter is ripe for disposition. Pursuant to 28 U.S.C. § 1404(a) ("§ 1404(a)"), Defendants request that this Court transfer the case to the Northern District of California. For the following reasons, the motion is granted.

### I. BACKGROUND

Plaintiff Corning Optical Communications Wireless, Ltd. ("Plaintiff" or "Corning Optical") filed suit on May 23, 2014, alleging that Defendants Solid, Inc. ("Solid") and Reach Holdings, LLC d/b/a Solid Technologies ("Reach" or "Solid Technologies") (collectively "Defendants") are infringing Plaintiff's patents in violation of 35 U.S.C. §§ 271(a), (b), and (c). The asserted patents are U.S. Patent No. 7,483,504 ("the '504 Patent"), entitled "MIMO-Adapted Distributed Antenna System," which issued on

January 27, 2009, and U.S. Patent No. 5,969,837 ("the '837 Patent"), entitled "Communications System," which issued on October 19, 1999 (collectively "the Patents"). (Compl. ¶¶ 25-26, ECF No. 1.)

Corning Optical is an Israeli company that is in the business of developing, marketing, distributing, installing, and supporting Distributed Antenna Systems ("DAS") products. (*Id.* ¶¶ 3, 23.) DAS products are often installed inside buildings and other large venues such as stadiums, airports, and campuses to enhance the reliability of wireless coverage. (*Id.* ¶ 23.) Corning Optical is organized under the laws of Israel and has its principal place of business in Airport City, Israel. (*Id.* ¶ 3.) Solid is a Korean[1] supplier and Reach is an American distributor. (*Id.* ¶¶ 4, 10, 11.) Reach is doing business as Solid Technologies. (*Id.* Introduction.) Reach is organized under the laws of Oregon and its principal place of business is in Sunnyvale, California. (*Id.* ¶ 10.) Solid has in the past conducted business under the name, Solid Technologies.[2] (*Id.* ¶ 5.) Reach competes with Corning Optical in the market for DAS products. (*Id.* ¶ 16.)

Solid makes, uses, offers to sell, sells, and/or imports into the U.S. telecommunications products, including DAS products. (*Id.* ¶ 6.) One of these products is the ALLIANCE Multi-Carrier DAS – which in at least some installations, is configured to propagate multiple input multiple output ("MIMO") signals over the DAS. (*Id.* ¶¶ 7-8.) Solid Technologies is the exclusive distributor of Solid's DAS products (including the ALLIANCE Multi-Carrier DAS) in the U.S. (*Id.* ¶ 11.) Solid and Solid

---

[1] Solid is organized under the laws of Korea and has its principal place of business in Seongnam, South Korea. (*Id.* ¶ 4.)

[2] "Solid Technologies" refers to Defendant Reach throughout this opinion.

Technologies have provided an ALLIANCE Multi-Carrier DAS that is installed at the Arlington Mill Community Center in Arlington, Virginia. (*Id.* ¶ 18.)

Plaintiff alleges that from 2003 until at least 2009, TriPower Group, Inc. ("TriPower") was a reseller of DAS products manufactured and sold by Mobile Access, a predecessor-in-interest to Corning Optical. (*Id.* ¶ 28.) Plaintiff alleges that Seth Buechley was an executive officer of TriPower from about 2001 to about 2009, and that he became familiar with Plaintiff's DAS products and intellectual property in his capacity at TriPower. (*Id.* ¶¶ 29-31.) According to Plaintiff, Buechley became president of Solid Technologies from 2010 to present, and informed Solid of the '504 and '837 patents and their contents. (*Id.* ¶¶ 34-36.) In addition, Plaintiff alleges that Ken Sandfeld, another TriPower employee, was familiar with Plaintiff's DAS products and intellectual property by virtue of his position. (*Id.* ¶¶ 37-39.) Sandfeld has allegedly been an executive vice president of Solid Technologies from 2010 to present. (*Id.* ¶ 42.) Plaintiff alleges that Sandfeld also informed Solid of the Patents and their contents. (*Id.* ¶¶ 43-44.)

## II. STANDARD OF REVIEW

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." § 1404(a). In a patent infringement action, motions to transfer venue pursuant to § 1404(a) are governed by the law of the regional circuit in which the Court sits. *See Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1352 (Fed. Cir. 2000).

Provided that the plaintiff's claims could initially have been brought in the transferee forum, "[t]he decision whether to transfer an action pursuant to § 1404(a) 'is

3

committed to the sound discretion of the district court.'" *BHP Int'l Inv., Inc. v. Online Exch., Inc.*, 105 F. Supp. 2d 493, 498 (E.D. Va. 2000) (quoting *Verosol B.V. v. Hunter Douglas, Inc.*, 806 F. Supp. 582, 591 (E.D. Va. 1992)); *see also Southern Ry. Co. v. Madden*, 235 F.2d 198, 201 (4th Cir. 1956), *cert. denied*, 352 U.S. 953 (1956). § 1404(a) "is intended to place discretion in the district court to adjudicate motions for transfer of venue according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

Thus, upon consideration of Defendants' motion, this Court must make two inquiries: (1) whether the claims might have been brought in the Northern District of California, and (2) whether the interest of justice and the convenience of the parties justify transfer to that district. *See, e.g., Corry v. CFM Majestic Inc.*, 16 F. Supp. 2d 660, 663, 666 (E.D. Va. 1998).

### III. DISCUSSION

#### A. Venue and Jurisdiction

Under the first prong of the Court's inquiry into a motion to transfer, the Court must consider whether: "(1) venue would have been proper in the transferee district, and (2) the transferee court could exercise personal jurisdiction over all the defendants." *L.G. Elecs., Inc. v. Advance Creative Computer Corp.*, 131 F. Supp. 2d 804, 809 (E.D. Va. 2001) (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22. 24 (3rd Cir. 1970)). The venue provision for patent infringement actions states, in relevant part, that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant

4

resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). With respect to corporations, "[f]or purposes of venue . . . a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). "Therefore, if a corporation 'resides' in a district within the meaning of § 1391(c), venue is proper in that district within the meaning of § 1400(b)" and "the tests for venue and personal jurisdiction are interchangeable for corporations." *L.G. Elecs.*, 131 F. Supp. 2d at 809–10.

Plaintiff contends that Defendants have not established that this case could have been brought in the Northern District of California. However, it is evident that this case could have been brought in that district because Defendants are subject to personal jurisdiction in California.

Reach is subject to personal jurisdiction in the Northern District of California because its principal place of business is in Sunnyvale, California and, thus, it is a "resident" of that district. *Id.*

While Solid has stipulated that it is subject to personal jurisdiction in the Northern District of California, (Mem. Supp. Mot. Transfer, Byeong Jin Jim Declaration ("Kim Decl.") ¶ 11, ECF No. 38-17), consent to personal jurisdiction is insufficient. *See Hoffman v. Blaski*, 363 U.S. 335, 344 (1960) (internal citation omitted). However, Solid is subject to personal jurisdiction in the Northern District of California because its products are exclusively distributed in the U.S. by Reach in its Sunnyvale, California headquarters. The alleged infringement arises out of Solid's shipment of allegedly

5

infringing DAS products to Reach in California and Reach's sales of these products in the U.S. (*See generally* Compl.) Thus, it is apparent that Solid "knew it was affiliating itself with a [business in California] in a manner that would lead to substantial contacts with California." *GT Secs., Inc. v. Klastech GmbH*, 2014 U.S. Dist. LEXIS 88237, at *29 (N.D. Cal. June 27, 2014). Accordingly, Solid "has made a prima facie showing that [it] purposefully availed itself of the 'privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws.'" *Id.* (citing *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. Cal. 2002)) (internal citations and quotations omitted).[3]

### B. Transfer of Case

Turning to the second prong of the transfer analysis under § 1404(a), the principal factors for district court consideration include the plaintiff's choice of forum, witness convenience and access, party convenience, and the interest of justice. *See Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 633 (E.D. Va. 2003); *Corry*, 16 F. Supp. 2d at 666. The Court will address each of these factors in succession.

### 1. Choice of Forum

"[T]he plaintiff's choice of forum is ordinarily entitled to substantial weight." *Koh*, 250 F. Supp. 2d at 633. However, the "weight given to plaintiff's choice of venue varies with the significance of the contacts between the venue chosen by plaintiff and the

---

[3] Plaintiff has acknowledged that Solid has contacts with California. Specifically, Plaintiff stated that on Solid's Korean-based webpage, Solid boasts of its presence in the United States by inviting the public to "Contact Us" in the "U.S.A." at 2301 Armstrong Street, Suite 101, Livermore, CA 94551. (Pltf.'s Opp. Def.'s Mot. Dismiss 13, ECF No. 46) (citing Pltf.'s Opp. Def.'s Mot. Dismiss, Joshua P. Larsen Declaration, Ex. 12 thereto, ECF No. 46-1.) Solid Technologies has since moved its headquarters from Livermore to Sunnyvale, California. (*Id.*)

underlying cause of action." *Bd. of Trs., Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1256 (E.D. Va. 1988); *see Agilent Techs., Inc. v. Micromuse, Inc.*, 316 F. Supp. 2d 322, 327 (E.D. Va. 2004) ("[T]he greater the connection between a plaintiff's chosen forum and the plaintiff's cause of action, the more weight a court will give to the plaintiff's choice"); *Convergence Techs. (USA), LLC v. Microloops Corp.*, 711 F. Supp. 2d 626, 641-642 (E.D. Va. 2010) (finding no "substantial connection to the events giving rise to the litigation," and accordingly, giving the plaintiff's "choice of its home forum [] less deference than it is typically accorded.").

Here, Plaintiff does not have a home forum in the United States. Plaintiff contends that this District is effectively its home forum because its DAS business is managed and run by its DAS Unit, which is based in Herndon, Virginia. (Pltf.'s Opp. Defs.'s Mot. Transfer 8-9, ECF No. 49, Robert M. Hutton Declaration ¶¶ 3, 8, ECF No. 49-1.) Plaintiff argues that given the centrality of DAS products to this case, Herndon is the "nerve center," establishing it as the principal place of business pertinent to this case. *See Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

However, neither Corning's DAS Unit nor its parent company are parties to this case, nor do they own the Patents at issue. Thus, they cannot provide a home forum for Plaintiff. *See Finmeccanica S.p.A. v. GMC*, 2007 U.S. Dist. LEXIS 85268 (E.D. Va. Nov. 19, 2007)[4]; *see also Saint-Gobain Calmar v. Nat'l Prods. Corp.*, 230 F. Supp. 2d

---

[4] The court held that the plaintiff, incorporated in Italy, could not establish a home forum in the Eastern District of Virginia (and was not entitled to substantial deference on its choice of forum there) on the basis that the plaintiff has two U.S. companies headquartered in the District when (1) those operations are small and did not play a role

7

655, 659-660 (E.D. Pa. 2002).[5] Further, Plaintiff plainly stated in the section of its Complaint establishing jurisdiction that its principal place of business is Airport City, Israel. (Compl. ¶ 3.)

Without a home forum, Plaintiff is only entitled to the deference afforded to its choice of forum. *See Original Creatine Patent Co., Ltd. v. Met-Rx USA, Inc.*, 387 F. Supp. 564, 568 (E.D. Va. 2005) (quoting *Ion Bean Applications S.A. v. Titan Corp.*, 156 F. Supp. 2d 552, 563 (E.D. Va. 2000)) ("Where the plaintiff has selected a forum where neither the plaintiff nor the defendant resides and where few or none of the events giving rise to the cause of action accrued, 'that plaintiff's choice loses its place status in the court's consideration.'") Thus, the Court must determine the extent of any possible connections between the Plaintiff's chosen forum, the Eastern District of Virginia ("this District"), and the cause of action and, therefore, the amount of deference, if any, afforded to Plaintiff's choice of forum.

Plaintiff alleges in its Complaint that Defendants have infringed on its Patents by making, using, offering for sale, selling, and/or importing one or more DAS products, including at least the ALLIANCE Multi-Carrier DAS, that are configured to propagate MIMO signals over the DAS. (*See generally* Compl.) Plaintiff alleges the infringement

---

in the cause of action; (2) Plaintiff chose a foreign forum to bring its suit; and (3) the cause of action bore little or no relation to the District. *Finmeccanica S.p.A.*, 2007 U.S. Dist. LEXIS 85268.

[5] The court held that the plaintiff's "attempts to bootstrap its connection" to its chosen forum via its parent company's principal place of business in that district are misguided because the parent and subsidiary are distinct legal entities, the parent company is not a party, and the asserted patents are owned by the subsidiary. *Saint-Gobain Calmar*, 230 F. Supp. 2d at 659-660.

was direct and indirect, and argues inducement and contributory infringement theories of indirect infringement. (*Id.*)

The location of the parties may bear on where the alleged infringement occurred. Yet none of the parties are located in or near Virginia. Plaintiff's location is not particularly significant, given that Defendants are the alleged infringing parties. Defendant Solid is based in Korea; it is not authorized to conduct business in Virginia; it does not have an agent designated for service of process in Virginia; and it has no offices, facilities, or employees in Virginia. (Kim Decl. ¶¶ 4-6.) Thus, Solid's location does not reveal anything about where the alleged infringing activity occurred in the United States.

On the other hand, Defendant Reach is incorporated in Oregon and has its principal place of business in Sunnyvale, California. Solid ships its DAS components, FOB Korea, directly to Reach's facilities in California. (Mem. Supp. Def.'s Mot. Quash Service, Seth Buechley Declaration ("Buechley Decl.") ¶ 5, ECF No. 23-1.) Thus, it appears that a significant portion of the alleged activity occurred in California, weighing in favor of giving less deference to the Plaintiff's choice of forum than is usually given.[6]

While Plaintiff alleges that Defendants provided DAS components that were ultimately installed in Arlington, Virginia and tested by Sprint in Reston, Virginia (Compl. ¶¶ 18,19), these links insufficiently establish that there is a strong connection between this District and the cause of action.

---

[6] Plaintiff argues that the fact that Reach litigated a trade secret misappropriation case against Corning Optical in the Circuit Court for Fairfax County last year – without any opposition to venue – weighs in favor of this case proceeding in this District. Plaintiff's comparison does not influence this Court's analysis, though, because that case is not controlling here, it involves a different area of the law, and was filed in state court.

Plaintiff alleges that Defendants' status as a Sprint-approved DAS provider shows that a meaningful amount of Defendants' sales of DAS products are likely made through or to Sprint, and that Defendants' DAS products likely have been operated, tested, and approved in Reston, Virginia. (Pltf.'s Opp. Def.'s Mot. Dismiss, Kevin Hussey Declaration ¶ 8, ECF No. 46-2.) However, Plaintiff's allegation does not speak to Defendants' relationship with non-party buyer, Sprint, a national company headquartered in Kansas that may choose to do its testing in Virginia. Such an independent choice of a non-party does not constitute substantial connection between the cause of action and this District. In addition, the frequency of the alleged testing is unclear, making it difficult to find strong connections on this basis. Further, even if regular testing of DAS products that had been supplied by Solid and distributed by Reach were conducted in Reston, such testing does not appear significant to the cause of action because it does not bear on the making, use, offer for sale, sale, and/or import by Defendants' of their DAS products. (Compl. ¶ 49.)

It appears that any allegedly infringing products sold in Virginia were quite minimal.[7] Regardless, whether Defendants sold or offered for sale their allegedly infringing products in this District is of little import. Sales activity alone does not establish a substantial connection to the forum, justifying deference to a Plaintiff's choice of forum. *See Agilent Techs., Inc.*, 316 F. Supp. 2d at 327 n.3. Under this criterion, the

---

[7] Seth Buechley, a managing member of Defendant Reach, represents that in the past five years, less than two percent of Reach's national sales of the accused ALLIANCE Multi-Carrier DAS product were to end users in Virginia. (Buechley Decl. ¶ 11.)

instant lawsuit likely could have been filed in any state where Defendant Reach sold or installed any DAS products.

Moreover, as the sales activity of DAS products is not unique to Virginia, the facts suggest little other than forum shopping by Plaintiff. Therefore, the more important question becomes "where the majority of the witnesses and evidence is located." *Id.* This leads the Court to the second and third factors of the § 1404(a) analysis—the convenience of witnesses and access to sources of proof, as well as the party convenience.

### 2. Party Convenience, Witness Convenience, and Access to Sources of Proof

The convenience of the parties is a relevant consideration in the transfer analysis. When evaluating this factor, "[t]he logical starting point is a consideration of the residence of the parties." *JTH*, 482 F.Supp.2d at 738; *see also Mullins*, 2006 WL 1214024, at *6 (quoting *U.S. Fid. & Guar. Co. v. Republic Drug Co.*, 800 F. Supp. 1076, 1080 (E.D.N.Y. 1992)). In resolving a motion to transfer venue the Court must also weigh the convenience to the witnesses in litigating in either venue. *Acterna, L.L.C. v. Adtech, Inc.*, 129 F. Supp. 2d 936, 939 (E.D. Va. 2001). The party asserting inconvenience to witnesses "has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience." *Koh*, 250 F. Supp. 2d at 636 (citing *Corry*, 16 F. Supp. 2d at 667 n.16).

One of the four co-inventors of the '504 Patent resides in the District, and another resides nearby in Potomac, Maryland. A number of Corning's DAS Unit employees

11

likely reside in or near the District; and Sprint employees who have tested the alleged infringing DAS products reside in the District. However, the majority of party and non-party witnesses – particularly those that could establish alleged infringement – are closer to the Northern District of California. *Id.*

The location of parties, witnesses and sources of proof in Plaintiff's base in Israel and Defendant Solid's base in Korea are essentially neutral in the transfer analysis. While Israel is closer to Virginia and Korea is closer to California, there will be significant costs for both parties to transport parties, witnesses, and proof from each of these countries, regardless of which forum is selected. Thus, an additional three hours flight time between the East and West Coasts of the United States is not dispositive.

The location of parties, witnesses, and sources of proof located in Defendant Reach's offices in Oregon and California weigh strongly in favor of transfer. Reach employees with knowledge of the import, sale, and installation of DAS products are mostly located on the West Coast. (Buechley Decl. ¶¶ 6-7.) In addition, Seth Buechley and Ken Sandfeld, the individuals whom Plaintiff alleges in its Complaint shared the contents of the Patents with Solid, reside in Oregon and Colorado, respectively. (*Id.* ¶ 7.) Thus, the convenience for Defendant Reach as well as the witnesses and proof on the West Coast, weigh strongly in favor of transfer.

It is significant that the only Defendant (and only party) located in the United States is on the West Coast because "'[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.'"

*Jaffé v. LSI Corp.*, 874 F. Supp. 2d 499, 504-505 (E.D. Va. 2012) (quoting *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)) (internal citation omitted).

For the foregoing reasons, the Court finds that the location of the parties, witnesses, and proof weigh strongly in favor of transfer.

### 3. Interest of Justice

"The interest of justice 'encompasses public interest factors aimed at systemic integrity and fairness.'" *Byerson v. Equifax Info Servs., LLC*, 467 F. Supp. 2d 627, 635 (E.D. Va. 2006) (quoting *Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 721 (2005) (internal quotation omitted)). Key considerations include the court's interest in promoting judicial economy and avoiding inconsistent judgments. *Id.* The "interest of justice" also includes circumstances such as "the pendency of a related action, the court's familiarity with the applicable law, docket conditions, access to premises that might have to be viewed, the possibility of unfair trial, the ability to join other parties, and the possibility of harassment." *Bd. of Trs.*, 702 F. Supp. at 1260. Further, "[f]airness is assessed by considering docket congestion, interest in having local controversies decided at home, . . . [and] unfairness in burdening forum citizens with jury duty." *Jaffé*, 874 F. Supp. 2d at 505 (internal citation omitted).

As established *supra*, Plaintiff has not shown substantial connection between this District and the alleged infringement. "Left unchecked, allowing lawsuits with such a minimal connection to the district to go forward here would result in docket overloads, unfairly slowing the cases for parties with genuine connections to this district." *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 997 (E.D. Va. 2011).

13

In addition, the only proposed district that could call this case a "local controversy" is the Northern District of California – where Defendant Reach has its principal place of business.

Judicial economy would be comparable in this District and in the Northern District of California. While it is possible that transfer could cause some delay in achieving a resolution of the claims, other courts in this District have stated that such docket considerations

> cannot be the primary reason for retaining a case in this district. This Court cannot stand as a willing repository for cases which have no real nexus to this district. The "rocket docket" certainly attracts plaintiffs, but the Court must ensure that this attraction does not dull the ability of the Court to continue to act in an expeditious manner.

*Telepharmacy Solutions, Inc. v. Pickpoint Corp.*, 238 F. Supp. 2d 741, 744 (E.D. Va. 2003) (citing *Cognitronics Imaging Sys., Inc. v. Recognition Research Inc.*, 83 F. Supp. 2d. 689, 699(E.D. Va. 2000)). Therefore, "docket conditions, although relevant, are a minor consideration, which a court must view in light of other relevant factors, and which will receive little weight if all other reasonable and logical factors result in a transfer of venue." *Koh*, 250 F. Supp. 2d. at 639 (citing *Intranexus, Inc. v. Siemens Med. Solutions Health Serv. Corp.*, 227 F. Supp. 2d 581, 585 (E.D. Va. 2002)). Further, this District has recognized that the Northern District of California has a "well-earned reputation as an experienced patent district." *Convergence Techs. (USA), LLC*, 711 F. Supp. 2d at 643.

The comparable judicial economy that would be advanced in both districts as well as the tenuous connection between this District and the alleged infringement weigh strongly in favor of transfer.[8]

## IV. CONCLUSION

In conclusion, although Plaintiff does not have a home forum in the United States to bring this action, that is not alone sufficient to eliminate all deference to its choice of forum. Nevertheless, there is a very loose association between the alleged infringement and this District – thus, reducing the deference afforded to Plaintiff's choice of forum. More importantly, the predominant number of parties and potential witnesses and documents relating to infringement are located outside of the country or on the West Coast. Because these factors weigh strongly in favor of transferring this action, they are not overborne by any consideration for the interest of justice. Therefore, the Court exercises its discretion and finds that § 1404(a) warrants transfer of the case to the Northern District of California. Accordingly, the Motion to Transfer is granted.

Because this case is being transferred to the Northern District of California, the Court denies Defendant's Motion to Dismiss as moot.

---

[8] Defendants contend that transfer is in the interest of justice because venue is improper as to Solid, and, thus, the case against Solid must be either dismissed or transferred. The Court does not reach this issue because it finds that transfer is appropriate regardless of whether venue is proper in this District.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: August 18, 2014
Richmond, Virginia