1  S. Christian Platt (State Bar No. 199318)
   cplatt@jonesday.com
2  Tharan Gregory Lanier (State Bar No. 138784)
   tglanier@jonesday.com
3  Jacqueline K. S. Lee (State Bar No. 247705)
   jkslee@jonesday.com
4  JONES DAY
   1755 Embarcadero Road
5  Palo Alto, CA 94303
   Telephone:  (650) 739-3939
6  Facsimile:   (650) 739-3900

7  Ognian V. Shentov (admitted *pro hac vice*)
   ovshentov@jonesday.com
8  Yeah-Sil Moon (admitted *pro hac vice*)
   ymoon@jonesday.com
9  JONES DAY
   222 East 41st Street
10 New York, NY  10017
   Telephone:  (212) 326-3939
11 Facsimile:   (212) 755-7306

12 Attorneys for Defendants
   SOLID, INC. and REACH HOLDINGS LLC
13

14                UNITED STATES DISTRICT COURT

15                NORTHERN DISTRICT OF CALIFORNIA

16                       SAN JOSE DIVISION

17

| | |
|---|---|
| 18  CORNING OPTICAL COMMUNICATIONS WIRELESS LTD., | Case No. 5:14-cv-03750-PSG |
| 19               Plaintiff, | **DEFENDANTS SOLID, INC. AND REACH HOLDINGS LLC'S NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT TESTIMONY OF MICHELE RILEY** |
| 20          v. | |
| 21  SOLID, INC. and REACH HOLDINGS LLC, | |
| 22               Defendants. | Date:     September 22, 2015<br>Time:    10:00 a.m.<br>Courtroom: 5, 4th Floor<br>Judge:    Hon. Paul S. Grewal |
| 23 | |
| 24 | |
| 25 | REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED |
| 26 | |

27

28

NAI-1500501478

DEFENDANTS' MOTION TO EXCLUDE
EXPERT TESTIMONY OF MICHELE RILEY
5:14-cv-03750-PSG

## NOTICE OF MOTION

PLEASE TAKE NOTICE THAT, on September 22, 2015 at 10:00 a.m., or as soon as the matter may be heard by the above-titled Court, located at 280 South 1st Street, San Jose, CA 95113, Courtroom 5, before the Honorable Paul S. Grewal, SOLiD, Inc. ("SOLiD") and Reach Holdings LLC ("Reach") (collectively, "Defendants") will move pursuant to Civil Local Rules 7-2, 7-4, and 7-5, Rule 702 of the Federal Rules of Evidence ("Rule 702"), and the Scheduling Order in this case (ECF No. 89) for an order against Corning Optical Communications Wireless, Ltd. ("Plaintiff") to exclude the expert testimony of Michele Riley. This motion is based on the Memorandum of Points and Authorities herein, Declaration of S. Christian Platt ("Platt Decl."), and exhibits attached thereto.

## RELIEF REQUESTED

Defendants respectfully request that the Court enter an order pursuant to Rule 702 of the Federal Rules of Evidence excluding the expert testimony of Michele Riley in its entirety.

**TABLE OF CONTENTS**

Page

I. STATEMENT OF ISSUES TO BE DECIDED ................................................................. 1

II. INTRODUCTION ............................................................................................................. 1

III. LEGAL STANDARD ....................................................................................................... 1

    A. Under Rule 702, Expert Opinion Must Be Qualified, Relevant, and Reliable ................................................................................................................. 1

    B. Expert Opinion on Patent Damages Must Be Tied to the Facts of the Case ........... 2

IV. RILEY'S DAMAGES OPINIONS SHOULD BE BARRED ........................................... 3

    A. Riley's Reasonable Royalty Opinions Should Be Excluded ................................... 3

        1. Riley's Selection of a Royalty Rate Is Unprincipled and Arbitrary ............ 3

        2. Riley's Royalty Base Is Not Tied to Alleged Infringement ........................ 9

    B. Riley's Legally Impermissible and Unqualified Lost Profits Opinions Should Be Excluded ................................................................................................ 10

V. CONCLUSION ................................................................................................................ 12

# TABLE OF AUTHORITIES

Page

**CASES**

*Arredondo v. Uniroyal Goodrich Tire Co.*,
   No. 95-17309, 1997 U.S. App. LEXIS 12502 (9th Cir. May 29, 1997) .................................. 5

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) ............................................................................................................ 2, 3

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
   363 F.3d 1263 (Fed. Cir. 2004) ............................................................................................. 10

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
   No. 13-cv-03999-BLF (N.D. Cal. July 14, 2015), ECF No. 378 ............................................ 8

*General Elec. Co. v. Joiner*,
   522 U.S. 136 (1997) ................................................................................................................ 9

*Good Tech. Corp. v. MobileIron, Inc.*,
   No. 5:12-cv-05826 (N.D. Cal. July 5, 2015), ECF No. 436 .................................................. 12

*Grain Processing Corp. v. Am. Maize-Prods. Co.*,
   185 F.3d 1341 (Fed. Cir. 1999) ............................................................................................... 2

*Imonex Servs., Inc. v. W.H. Munzprufer Dietmar Trenner GmbH*,
   408 F.3d 1374 (Fed. Cir. 2005) ............................................................................................. 12

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
   694 F.3d 51 (Fed. Cir. 2012) ..................................................................................... 9, 10 , 12

*Mars, Inc. v. Coin Acceptors, Inc.*,
   527 F.3d 1359 (Fed. Cir. 2008) ............................................................................................. 11

*Pioneer Hi-Bred Int'l, Inc. v. Ottowa Plant Food, Inc.*,
   219 F.R.D. 135 (N.D. Iowa 2003) ........................................................................................ 11

*Poly-America, L.P. v. GSE Lining Tech., Inc.*,
   383 F.3d 1303 (Fed. Cir. 2004) ............................................................................................. 11

*ResQNet.com, Inc. v. Lansa, Inc.*,
   594 F.3d 860 (Fed. Cir. 2010) ........................................................................................... 2, 10

NAI-1500501478 — -iii- — DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF MICHELE RILEY 5:14-cv-03750-PSG

*Salinas v. Amtek of Ky., Inc.*,
  682 F. Supp. 2d 1022 (N.D. Cal. 2010) ............................................................................. 2

*Sundance, Inc. v. DeMonte Fabricating Ltd.*,
  550 F.3d 1356 (Fed. Cir. 2008) ........................................................................................... 1

*Tech. Licensing Corp. v. Gennum Corp.*,
  No. 3:01-cv-4204-RS, 2004 U.S. Dist. LEXIS 10604 (N.D. Cal. Mar. 26,
  2004) ............................................................................................................................... 8, 9

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011) .................................................................................. passim

*Veritas Operating Corp. v. Microsoft Corp.*,
  562 F. Supp. 2d 1141 (W.D. Wash. 2008) ........................................................................ 10

*VirnetX, Inc. v. Cisco Sys., Inc.*,
  767 F.3d 1308 (Fed. Cir. 2014) ........................................................................................... 7

*Whitserve, LLC v. Comput. Packages, Inc.*,
  694 F.3d 10 (Fed. Cir. 2012) ............................................................................................... 9

**STATUTES**

35 U.S.C. § 284 ........................................................................................................................ 2, 3

**RULES**

Fed. R. Evid. 702 .................................................................................................................. passim

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      STATEMENT OF ISSUES TO BE DECIDED**

Whether the Court should exclude the expert testimony of Michele Riley in its entirety pursuant to Rule 702 of the Federal Rules of Evidence.

**II.     INTRODUCTION**

Given its recent concession that Defendants do not infringe U.S. Patent No. 7,483,504, Plaintiff seeks damages now only for alleged infringement of U.S. Patent No. 5,969,837 ("'837 Patent").  But it cannot rely on the testimony of its proffered damages expert, Michele Riley, to do so.  This is because Riley's damages opinions fail to comport with Federal Circuit law or the Federal Rules of Evidence.

As explained in Defendants' Motion for Summary Judgment, Riley's lost profits opinions improperly focus on lost profits allegedly incurred by Plaintiff's parent company, not Plaintiff, and must be barred.  Even had Riley articulated a legally permissible lost profits theory, her unqualified opinions on demand for the patented feature do not pass muster under Rule 702.

Similarly, Riley's opinions on the reasonable royalty purportedly due to Plaintiff as a result of infringement must be excluded because they are not tied to the alleged infringing activity or the claimed invention.  Moreover, Riley concedes to employing a "subjective," unprincipled approach that leads her to arbitrarily select a royalty rate—one that inflates Plaintiff's damages while ignoring the lower royalty rate to which Plaintiff claimed, in a verified discovery response, it would be entitled.

Plaintiff should not be permitted to present Riley's unqualified, unreliable, and irrelevant damages testimony at trial.  Accordingly, the Court should grant Defendants' motion to exclude Riley's opinions in their entirety.

**III.    LEGAL STANDARD**

**A.      Under Rule 702, Expert Opinion Must Be Qualified, Relevant, and Reliable**

"Patent cases, like all other cases, are governed by Rule 702." *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1360 (Fed. Cir. 2008).  Rule 702 provides that experts qualified by 'knowledge, skill, experience, training, or education" may testify in the form of an opinion or

otherwise if the testimony will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.  An expert may provide testimony only where (1) "the testimony is based on sufficient facts or data," (2) "the testimony is the product of reliable principles and methods," and (3) "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.  The trial court must act as a "gatekeeper" to ensure that expert testimony is both reliable and relevant to the issues being tried.  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).  The proponent of the expert testimony has the burden to establish "by a preponderance of the evidence that the admissibility requirements are met." *Salinas v. Amtek of Ky., Inc.*, 682 F. Supp. 2d 1022, 1029 (N.D. Cal. 2010).

**B.     Expert Opinion on Patent Damages Must Be Tied to the Facts of the Case**

Upon a showing of infringement, a patentee is entitled to recover "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty . . . ." 35 U.S.C. § 284.  "A 'reasonable royalty' derives from a hypothetical negotiation between the patentee and the infringer when the infringement began." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 868 (Fed. Cir. 2010).  Although "[d]etermining a fair and reasonable royalty is often . . . a difficult judicial chore," the Federal Circuit has emphasized that "a reasonable royalty analysis requires a court to hypothesize, not to speculate." *Id.* at 89 (citation omitted); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999) ("To prevent the hypothetical from lapsing into pure speculation, this court requires sound economic proof of the nature of the market and likely outcomes with infringement factored out of the economic picture.").  Whatever form of damages a patentee seeks, "the damages inquiry must concentrate on compensation for the economic harm caused by infringement of the claimed invention." *ResQNet.com*, 594 F.3d at 869.  "Thus, the trial court must carefully tie proof of damages to the claimed invention's footprint in the market place." *Id.*  "Any evidence unrelated to the claimed invention does not support compensation for infringement but punishes beyond the reach of the statute." *Id.*

Ultimately, the "patentee bears the burden of proving damages." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011).  To carry this burden, it may offer "expert testimony as an aid to the determination of damages or what royalty would be reasonable under

the circumstances." 35 U.S.C. § 284.  In so doing, however, "the patentee must 'sufficiently [tie the expert's testimony on damages] to the facts of the case.'" *Uniloc*, 632 F.3d at 1315 (quoting *Daubert*, 509 U.S. at 591) (alteration in original).  If the "patentee fails to tie the theory to the facts of the case, the testimony must be excluded." *Id.*

## IV. RILEY'S DAMAGES OPINIONS SHOULD BE BARRED

On May 22, 2015, Plaintiff served an "Expert Report on Damages by Michele M. Riley" ("Riley Report") in which Riley purports to "determine the amount of damages due to Corning Wireless in the event that" the Patents-in-Suit are found valid and infringed by Defendants.  Ex. 12[1] (Riley Report) at 4.  Riley opines that, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* at 7.  Riley alternatively posits that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓[2] *Id.*  But none of Riley's opinions satisfy the requirements of Rule 702, and all should be excluded.

### A. Riley's Reasonable Royalty Opinions Should Be Excluded

Riley opines that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓; she arrives at this figure by ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.  Ex. 12 (Riley Report) at 40 & Ex. I.  In so doing, however, Riley employs an unprincipled approach that results in her selection of an arbitrary royalty rate—one that fails to even consider Plaintiff's admissions in the litigation as to the ***highest*** rate it would seek in a hypothetical negotiation.  Similarly, Riley makes no effort to tie her claimed royalty base to alleged infringement.  Riley's approach thus vastly overstates Plaintiff's alleged damages, violates Federal Circuit law and the Federal Rules of Evidence, and should be barred.

#### 1. Riley's Selection of a Royalty Rate Is Unprincipled and Arbitrary

To determine a royalty rate for her reasonable royalty calculation, Riley ▓▓▓▓▓

---

[1] Unless otherwise indicated, all references to Exhibits are to those attached to the concurrently filed Declaration of S. Christian Platt ("Platt Decl.").

[2] *See* ECF No. 258-4 (Defs' Mot. for Summary Judgment) at 35-38 (arguing that Court should grant summary judgment dismissing Plaintiff's lost profits claim).

1
2
3     ▮ Ex. 12 (Riley Report) at 59-60. At every step, Riley's royalty rate analysis suffers from
4     critical flaws which require the exclusion of her arbitrary and admittedly "subjective" opinions.
5     Ex. 5 (Riley Depo.) at 201:13-202:2.
6            **Step 1:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The first step in Riley's royalty rate
7     analysis—▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
8     ▮▮▮▮▮—is unreliable because it is not tied to the facts of the case or the claimed invention.
9     As Riley explains, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
10    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
11    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
12    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
13    ▮▮▮▮▮▮▮▮▮▮ Ex. 12 (Riley Report) at 46-47 & Exs. M-N. Putting aside Riley's errors in
14    computing these margins (which errors are addressed in Defendants' damages expert's rebuttal
15    report), Riley's reference range is legally flawed because it ignores critical facts.
16           *First*, Riley's royalty opinions wholly fail to consider Plaintiff's verified admissions, in
17    response to Defendants' Interrogatory No. 11, that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
18    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
19    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 8 (Pl's 3rd Supp. Objs. & Resp. to
20    Rogs) at 9, 13; Ex. 11 (Pl's Verification of Rogs); *see also* Ex. 5 (Riley Depo.) at 148:16-149:22
21    (Riley admitting that she "did not take into account the fact that Corning Wireless would have
22    accepted less than 15 percent as a royalty for the patent-in-suit . . . there's nothing that would
23    point to that conclusion").
24           *Second*, Riley's ▮▮▮▮▮▮▮▮▮ is further flawed because it does not focus on Plaintiff—
25    Corning Optical Communications Wireless, Ltd. Instead, it ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
26    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮c.

---

27           [3] According to Riley, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 12
28    (Riley Report) at 46.

1  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. 12 (Riley

2  Report) at 12, 46-47 & Ex. C ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

3  ▓▓▓▓▓▓▓▓▓▓▓); *see also* Ex. 5 (Riley Depo.) at 151:10-152:8.[4]

4        These are critical facts to a royalty analysis that Riley simply ignores in providing her own

5  inflated opinions. This flaw in Riley's approach renders Riley's entire analysis unreliable, as it

6  shows Riley's complete disregard for "the facts of the case." Fed. R. Evid. 702; *Arredondo v.*

7  *Uniroyal Goodrich Tire Co.*, No. 95-17309, 1997 U.S. App. LEXIS 12502, at *3 (9th Cir. May

8  29, 1997) (affirming exclusion of expert opinion that "fail[ed] to note" key fact and was

9  "therefore unreliable and inadmissible"); *Uniloc*, 632 F.3d at 1315.

10        **Step 2:** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ In step two of her analysis,

11  Riley ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

12  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

13  ▓▓▓ Ex. 12 (Riley Report) at 59-60 & Exs. M-N. But ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

14  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

15  bears no relation to a hypothetical negotiation of a license to use the technology claimed in the

16  '837 Patent. As Riley conceded at deposition, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

17  "normal" industry profitability figure derives did not "involve comparable subject matter to that

18  claimed in the '837 Patent"—it related to profits earned by computer and electronics distributors:

19        ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

20        ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ . . . ***They're not meant to study the***

21        ***industry of distributed antenna systems, nor the teachings of the***
      ***'837 patent***.

22  Ex. 5 (Riley Depo.) at 156:16-158:11 (emphasis added) (admitting that ▓▓▓▓▓▓▓▓▓▓▓▓

23  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ analysis is "not specifically targeted to the industry in

24  which . . . Corning Wireless and SOLiD/Reach compete"); Ex. 14 (Depo. Ex. 124) at 27. Riley

25  fails to explain how or why a ▓▓ "normal" profitability for computer and electronics distributors

26  properly factors into a hypothetical negotiation for a license to use distributed antenna system

---

[4] Defendants separately have moved for summary judgment to dismiss Plaintiff's claim for lost profits, which likewise focuses on alleged lost profits of Corning U.S., not the Plaintiff. ECF No. 258-4 at 35-38.

1  technology; her bare (and unsupported) assertion that ▮▮▮▮▮

2  ▮▮▮▮▮ is insufficient.  *See, e.g., Uniloc*, 632 F.3d at 1317

3  (rejecting 25% Rule of Thumb as permissible approach to calculate reasonable royalty, as "rule

4  does not say anything about a particular hypothetical negotiation or reasonable royalty involving

5  any particular technology, industry, or party").  Riley's use of this inapposite ▮▮▮▮▮

6  ▮▮▮▮▮

7       **Step 3:**  ▮▮▮▮▮  Next, Riley

8  ▮▮▮▮▮

9  ▮▮▮▮▮  Ex. 12 (Riley Report) at 60 & Exs. M-O.  Specifically, Riley claims to use

10  the ▮▮▮▮▮

11  *Id.*  To do so, Riley purports to ▮▮▮▮▮

12  ▮▮▮▮▮

13  ▮▮▮▮▮

14  ▮▮▮▮▮.[5]  *Id.*; *see also generally* Ex. 5 (Riley Depo.) at

15  175:10-178:15.  But Riley's "market share proxy"—or "market share profit split"—approach is

16  both illogical and arbitrary.

17       Under Riley's theory, ▮▮▮▮▮

18  ▮▮▮▮▮

19  But Riley makes no effort to identify how relative market share is tied to the claimed invention's

20  footprint in the market place.  For example, she makes no adjustment to exclude from the market

21  Reach's sales of non-accused Express DAS products or Corning products that do not practice the

22  '837 Patent claims.  She also does not address that it is Corning U.S.—not Plaintiff—that has the

23  subject market share in the United States, or make any adjustment to reflect Corning U.S.'s larger

24  corporate presence in the United States.  In fact, Riley essentially admits that she would not be

25  capable of connecting market share to the value of the intellectual property at issue and that she

26  did not bother to do so.  At her deposition, Riley confirmed that she does not hold herself out as

---

[5] The flaws in Riley's computation of relative market share—including her omission of other competitors in the DAS market from her analysis—are addressed in the rebuttal report of Defendants' damages expert Brett Reed.

1   an expert in determining market share. Ex. 5 (Riley Depo.) at 24:7-18 ("I do not have particular
2   expertise in interviewing customers and talking to people at companies in order to determine
3   market share."). And she conceded that her decision to use a "market share profit split" approach
4   was not "dependent upon the technology claimed in the '837 patent." *Id.* at 197:2-12.

5           Moreover, Riley's "market share profit split" leads to nonsensical results. If the market
6   share of the accused infringer was relatively larger compared to that of the patent holder, there is
7   no basis for the idea that the patent holder would demand a *smaller* share of the profit because of
8   this relative difference—for instance, in a situation involving a small, new competitor with key
9   innovative technology. Demonstrating the arbitrary nature of Riley's "market share profit split,"
10  Riley effectively concedes that her "market share profit split" cannot be used in any other context.
11  At her deposition, Riley admitted that she had no "empirical explanation" as to when she would
12  apply her "market share profit split" approach other than "when you have unequal bargaining
13  power [and] . . . you're trying to quantify what the patentholder/practicing entity is giving up in
14  terms of marketshare and/or profits . . . ." Ex. 5 (Riley Depo.) at 190:1-13; *see also id.* at 178:16-
15  189:24. But even in those circumstances—for example, where one hypothetical negotiator has
16  51% relative market share as compared to the other negotiator having 49% market share—Riley
17  could not commit to whether her "market share profit split" applies. *Id.* at 180:23-187:10 ("I
18  think it absolutely varies from case to case. . . . I can't necessarily use it in every case because
19  circumstances are different in every case."). And she was unable to identify a single instance in
20  which her "market share profit split" approach had been accepted by a court, or discussed or
21  applied by peers in her field. *See id.* at 166:5-174:22.

22          Riley's inability to articulate any rational criteria for applying her novel "market share
23  profit split" approach—including in the instant case—confirms that, like the Nash Bargaining
24  Solution approach and the 25% Rule that the Federal Circuit has repeatedly rejected, Riley's
25  "market share profit split" approach is insufficiently tied to the facts to be advanced as expert
26  opinion to the jury. For example, in *VirnetX, Inc. v. Cisco Sys., Inc.*, the Federal Circuit held that
27  an expert's use of the Nash Bargaining Solution, which posits an initial 50/50 split of incremental
28  profits, to calculate a reasonable royalty theory, was improper because the expert had failed to

establish the "fit" of this approach to the facts of the case.  767 F.3d 1308, 1332 (Fed. Cir. 2014).  This was so even though the expert "attempt[ed] to account for the unique facts of the case in deviating from the 50/50 starting point" by 10% (for a 45/55 split) "to reflect the fact that Apple would have additional bargaining power over VirnetX back in . . . 2009." *Id.* at 1333.  As in *VirnetX*, Riley's superficial attempt to tie her "market share profit split" to the facts of the case by invoking an analysis of supposed relative market share cannot "save[]" her theory from exclusion. *Id.*; *see also Uniloc*, 632 F.3d at 1311, 1317 (rejecting use of 25% Rule, which posits 25/75 split of value of profit; attempt "adjust this 25% up or down depending on how [the *Georgia-Pacific* factors] favor[] either party" was insufficient to remedy "unreliable and irrelevant" approach); *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-cv-03999-BLF (N.D. Cal. July 14, 2015), ECF No. 378 at 13 (barring expert testimony where expert gave "no explanation as to why the forward-citation methodology is an appropriate measure of the value of the patents at issue in this case").

Unlike the Nash Bargaining Solution, however, Riley's "market share profit split" is not supported by any economic writings or theory, let alone the significant economy theory and research contributing to Dr. Nash's Nobel prize.  Indeed, Riley's "market share profit split" approach results in even more extreme results as compared to the disapproved "25% Rule" or Nash Bargaining Solution approaches.  Based solely on the relative market share of Corning U.S. compared to Reach (depending on the time period used, Riley calculates that Corning U.S. has ▊ or ▊ and Reach has the remaining ▊ or ▊ of the combined share), Riley assigns ▊ or ▊ of the net incremental profits to the patentee.  As discussed above, however, under the rejected "25% Rule" or Nash Bargaining Solution, only 25% or 50% of the profit would be assigned to the patentee as a starting point.  That Riley's "market share profit split" has never been approved as a methodology to compute a reasonable royalty further warrants exclusion of Riley's royalty opinions.  *See Tech. Licensing Corp. v. Gennum Corp.*, No. 3:01-cv-4204-RS, 2004 U.S. Dist. LEXIS 10604, at *24-25, 31 (N.D. Cal. Mar. 26, 2004) (barring damages opinion based on use of "novel methodology wherein he simply 'used his judgment' to arrive at figures he determined were 'reasonable' and 'conservative' based purely on the profits of one of [defendant's] customers"); *Uniloc*, 632 F.3d at 1315 ("patentee must 'sufficiently [tie the expert's

1 testimony on damages] to the facts of the case'").

2 **Step 4: Final "Subjective" Adjustment.** Finally, as set forth in a single sentence in her
3 report, Riley makes ████████████████████████████████████████████████
4 ████████████████████████████████████████████████████████████████████
5 ████████—thereby arriving at her ██ royalty figure. Ex. 12 (Riley Report) at 60. In this last
6 step, Riley dispenses with any pretense of applying a methodology to arrive at her final royalty
7 rate, admitting at deposition:

8     ████████████████████████████████████████████
9     ████████████████████████████████████████████
10    ████████████████████████████████████

11 Ex. 5 (Riley Depo.) at 201:22-202:2. This is classic *ipse dixit*. *General Elec. Co. v. Joiner*, 522
12 U.S. 136, 146 (1997) (court may exclude opinion that is connected to data only by *ipse dixit* of
13 expert because "a court may conclude that there is simply too great an analytical gap between the
14 data and the opinion proffered"); *see also Whitserve, LLC v. Comput. Packages, Inc.*, 694 F.3d
15 10, 32 (Fed. Cir. 2012) (finding expert testimony did not support damages award where he
16 provided no explanation as to how he arrived at final royalty figure); *Tech. Licensing*, 2004 U.S.
17 Dist. LEXIS 10604, at *24-25, 31 (excluding expert opinion based on use of "novel methodology
18 wherein he simply 'used his judgment' to arrive at figures he determined were 'reasonable' and
19 'conservative'"). Just as in *LaserDynamics, Inc. v. Quanta Comput., Inc.*, Riley's "complete lack
20 of economic analysis to quantitatively support" her final royalty adjustment "echoes the kind of
21 arbitrariness of the '25% Rule' that [the Federal Circuit] recently and emphatically rejected from
22 damages experts" and requires exclusion of her royalty opinions. 694 F.3d 51, 69 (Fed. Cir.
23 2012) (excluding expert opinion where expert's "one-third apportionment to bring his royalty rate
24 down from 6% per ODD to 2% per laptop computer appears to have been plucked out of thin air
25 based on vague qualitative notions of the relative importance of the ODD technology").

26         **2.     Riley's Royalty Base Is Not Tied to Alleged Infringement**
27 Riley's reasonable royalty opinions also should be excluded because her royalty base is
28 not tied to alleged infringing sales, and in this way further violates the requirement that "proof of

damages" must be "carefully tie[d] . . . to the claimed invention's footprint in the market place." *ResQNet.com*, 594 F.3d at 869.

In her report, Riley explains that ███████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████ Ex. 12 (Riley Report) at 40 & Ex. I.  Even putting aside that the revenues that form Riley's royalty base ████ ████████████████████████ (which Riley admits is inappropriate[6]), Riley's royalty base suffers from an even more fundamental problem:  Riley makes no effort to identify which of Tri-Power and Reach's sales of Alliance DAS equipment involved the use, sale, offer for sale, creation, or importation of systems that meet each limitation of the asserted '837 Patent claims.  Ex. 5 (Riley Depo.) at 103:18-25 (Riley conceding that she did not do "any type of analysis to determine whether any Alliance equipment that was sold may have been set up in a non-infringing manner").  Instead, Riley sweeps in all sales of Alliance DAS components without regard to whether they ultimately were installed in an allegedly infringing way.  Riley's failure to tie her royalty base to actual instances of alleged infringement requires exclusion of her royalty opinions.  *Uniloc*, 632 F.3d at 1315; *see also, e.g.*, *Veritas Operating Corp. v. Microsoft Corp.*, 562 F. Supp. 2d 1141, 1287 (W.D. Wash. 2008) (holding that patentee seeking damages for alleged indirect infringement "must restrict its damages to those stemming from specific instances of direct infringement by [defendant's] customers"); *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1274 (Fed. Cir. 2004); *LaserDynamics*, 694 F.3d at 68 ("Admission of such overall revenues, which have no demonstrated correlation to the value of the patented feature alone, only serve to make a patentee's proffered damages amount appear modest by comparison, and to artificially inflate the jury's damages calculation beyond that which is 'adequate to compensate for the infringement.'").

### B.  Riley's Legally Impermissible and Unqualified Lost Profits Opinions Should Be Excluded

As addressed in detail in Defendants' Motion for Summary Judgment, Plaintiff's lost

---

[6] *See* Ex. 5 (Riley Depo.) at 215:14-217:1.

1  profits claim—as articulated in Riley's report and deposition testimony—cannot stand because it
2  seeks to recoup purported lost profits of non-party Corning U.S., which is improper under Federal
3  Circuit law.  *See generally* ECF No. 258-4 at 35-38; *Poly-America, L.P. v. GSE Lining Tech.,*
4  *Inc.*, 383 F.3d 1303, 1311 (Fed. Cir. 2004); *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359,
5  1365 (Fed. Cir. 2008).  Because Riley's lost profits opinions center on an analysis of Corning
6  U.S., they are inconsistent with the law and must be barred in their entirety.  *Cf. Pioneer Hi-Bred*
7  *Int'l, Inc. v. Ottowa Plant Food, Inc.*, 219 F.R.D. 135, 140 (N.D. Iowa 2003) (excluding expert
8  opinion "based on an erroneous legal premise" at odds with court's summary judgment ruling).

9  　　　Even had Riley advanced a legally cognizable lost profits claim on Plaintiff's behalf, she
10 should be barred by Rule 702 from offering her indisputably unqualified opinions on ▮▮▮
11 ▮▮▮▮▮▮▮▮▮▮▮▮.  Ex. 12 (Riley Report) at 24.
12 Rule 702 requires that expert testimony by based on "the expert's scientific, technical or other
13 specialized knowledge."  Fed. R. Evid. 702.  But in purporting to opine that, ▮▮▮
14 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Riley confesses
15 that she has no specialized knowledge or qualification to assess whether the patented features
16 drive demand for DAS products embodying the patented features:

17 　　　Q. . . . So for the benefits [of the patented features] that you're
　　　talking about, you discussed marrying that up to the patent claims.
18 　　　That's something you would leave to the technical experts, correct?

19 　　　A. I think they're best equipped to do it.  I just tried to do it.  To
　　　the extent there's an aha moment coming that says, "You're
20 　　　wrong."  I accept that I'm wrong.  But my understanding of the
　　　benefits of the patent are as I've stated them multiple times. . . . I'm
21 　　　just describing for you that I certainly understand if I'm incorrect.

22 　　　Q. And so where did you get that understanding . . [o]f the
　　　benefits and how they're tied to the patented f[ea]tures in the claims
23 　　　of the '837 patent?

24 　　　A. Like I said, ***it's just my layperson's read of the patent.***

25 Ex. 5 (Riley Depo.) at 140:8-141:6; *see also id.* at 136:15-140:7, 141:7-145:6 (explaining that ▮
26 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
27 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
28 ▮▮▮▮▮▮▮▮).  Further, Riley admits that she

did not conduct any surveys regarding demand for the patented features of the '837 Patent or discussions with technical experts or purchasers of DAS equipment, such as value-added resellers (VARs) or integrators. *Id.* at 135:1-136:14. Because Riley would be doing no more than applying her "layperson's understanding" to the "case record"—the province of the jury—"[i]t would be improper to present such testimony to the jury cloaked in the guise of expert opinion." *Good Tech. Corp. v. MobileIron, Inc.*, No. 5:12-cv-05826 (N.D. Cal. July 5, 2015), ECF No. 436 at 15-16 at (barring proffered expert testimony on commercial acceptability of non-infringing testimony where opinions were not "based in any market research or particular expertise in the area"); *LaserDynamics*, 694 F.3d at 69 (affirming grant of new trial where expert relied on entire market value rule but "never conducted any market studies or consumer surveys to ascertain whether the demand for [accused product] is driven by the patented technology"); *cf. Imonex Servs., Inc. v. W.H. Munzprufer Dietmar Trenner GmbH*, 408 F.3d 1374, 1380 (Fed. Cir. 2005) (affirming exclusion of expert opinion that relied on entire market value rule "[w]ithout any evident record that the patented features were the basis for customer demand").

## V.  CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court exclude the expert testimony of Michele Riley in its entirety.

Dated: September 8, 2015

Respectfully submitted,

JONES DAY

By: */s/ S. Christian Platt*
　　S. Christian Platt

Counsel for Defendants
SOLID, INC. and
REACH HOLDINGS LLC