1

2

3

4

5

6            UNITED STATES DISTRICT COURT

7          NORTHERN DISTRICT OF CALIFORNIA

8              SAN JOSE DIVISION

9

10

| | |
|---|---|
| CORNING OPTICAL | ) Case No. 5:14-cv-03750-PSG |
| COMMUNICATIONS WIRELESS LTD., | ) |
| | ) **ORDER RE: MOTIONS FOR** |
| Plaintiff, | ) **SUMMARY JUDGMENT** |
| | ) |
| v. | ) **(Re: Docket Nos. 258-3, 273)** |
| | ) |
| SOLID, INC., et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

Plaintiff Corning Optical Communications Wireless, Ltd. claims Defendants SOLiD Inc.
and Reach Holdings LLC infringe U.S. Patent Nos. 5,969,837 and 7,438,504. The '837 and '504
patents are directed to distributed antenna system networks that improve wireless coverage in
buildings and other large structures. Defendants move for summary judgment that (1) Corning's
claims are barred in whole by equitable estoppel and in part by laches; (2) Defendants do not
infringe either asserted patent; (3) Corning is not entitled to lost profits damages and (4) Corning is
not entitled to pre-suit damages relating to alleged infringement of the '837 patent.[1] Corning in
turn moves for summary judgment that the '837 patent is not invalid under 35 U.S.C. §§ 102 or
103. For the reasons set forth below, Defendants' motion is GRANTED, but only IN-PART, and

---

[1] The court previously denied summary judgment with respect to noninfringement of the '837
patent but reserved its decision on the remaining issues. *See* Docket No. 303 at 1.

Corning's motion is DENIED in its entirety.

## I.

The '837 patent was filed on July 1, 1997 and issued on October 19, 1999.[2]  The '837 patent describes a DAS which uses a single optical fiber "simultaneously for a number of wireless communications systems."[3]  Figure 1 of the '837 patent depicts a "typical system [in which] a plurality of wireless network services, such as PCS, GSM and other wireless telephone and radio services as well as paging services, each communicate via an appropriate antenna (not shown) with one or more multi-system stations:"[4]



Figure 1 shows a base unit (10) "which communicates with each of the required wireless network services" via "fiberoptic cables 16 to a plurality of remote units 20."[5]  The base station combines the wireless signals into a multiplexed RF, converts the RF signal to an optical signal and

---

[2] *See* Docket No. 177-1 at 1.

[3] *Id.* at col. 1:43-46.

[4] *Id.* at col. 3:36-41.

[5] *Id.* at col. 3:52-58.

2

sends the optical signal to the remote unit.[6]  Each remote unit receives the optical signal
transmitted via the fiberoptic cable, converts the optical signal to RF, splits the RF signal and then
transmits the signal through "individual antennas, such as antennas 30, 28 and 26 for PCS, GSM
and paging networks respectively."[7]

Claim 1 of the '837 patent is representative:

> 1. A communications station comprising:
> a base unit comprising:
> a communications interface for communicating with plural wireless
> communications networks;
>
> wherein the plural wireless communications networks comprise at least
> two communications networks selected from the group consisting of
> cellular telephone networks cordless telephones, wide area data networks
> wireless local area networks, personal communications systems, personal
> communications networks, paging/messaging networks and satellite
> mobile systems;
>
> a received communications combiner for combining received analog
> communications signals received from said plural wireless
> communications networks into a single radio frequency analog output;
>
> a transmit communications splitter for splitting previously combined
> transmit analog communications signals to be transmitted to said plural
> wireless communications networks into plural radio frequency analog
> outputs;
>
> at least one fiberoptic transmitter receiving said single radio frequency
> analog output and providing a corresponding optical output; and
>
> at least one fiberoptic receiver receiving an optical input and providing an
> RF analog output containing previously combined transmit analog
> communications signals;
>
> a plurality of remote units, each comprising:
> plural antennas for communicating with communicators along plural
> wireless communications networks;
>
> a received communications splitter for splitting previously combined

---

[6] *See id.*

[7] *Id.* at col. 3:62-67.

Case No. 5:14-03750-PSG
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

received analog communications signals from said base unit and supplying them to said plural antennas;

a transmit communications combiner for combining transmit analog communications signals from said plural antennas into a combined radio frequency analog output;

a fiberoptic transmitter receiving said combined radio frequency analog output and providing a corresponding optical output; and

a fiberoptic receiver receiving an optical input and providing an RF analog output to said received communications splitter containing previously received transmit analog communications signals;

a first optical fiber connecting each fiberoptic transmitter of said base unit with a corresponding fiberoptic receiver in a corresponding remote unit; and

a second optical fiber connecting each fiberoptic transmitter of a remote unit with a corresponding fiberoptic receiver in said base unit; and

wherein a low frequency control signal is multiplexed by said communications interface onto said optical fiber for providing loop back alarm status of each remote unit and for providing control signals thereto, which control amplifier gain and balance thereof.[8]

Corning alleges that SOLiD's ALLIANCE Multi-Carrier DAS products infringe on Claims 1 through 8 of the '837 patent literally and under the doctrine of equivalents.[9]  Corning further alleges that SOLiD, the Korean company that manufactures these products, is liable under a theory of indirect infringement, and that Reach, the exclusive American distributor of SOLiD's Alliance DAS products, is liable for both direct and indirect infringement.[10]

Defendants, meanwhile, contend that four prior art references anticipate the '837 patent,[11] including International Publication No. WO 94/28960 to Russell et al.,[12] U.S. Patent Nos.

---

[8] *Id.* at col. 6:17-7:5.

[9] *See* Docket No. 218-2 at 2, 4.

[10] *See id.* at 2-10; Docket No. 258-3 at 2-3.

[11] *See* Docket No. 244-1 at 10-14.

[12] *See* Docket No. 274-2.

4

United States District Court
For the Northern District of California

5,809,395 to Hamilton-Piercy et al.,[13] 5,339,184 to Tang[14] and 6,016,426 to Bodell.[15] Defendants also contend that these and several other references, both individually and in various combinations, render the '837 patent invalid as obvious in light of the prior art.[16]

The '504 patent was filed on February 6, 2008 and issued on January 27, 2009.[17] The '504 patent discloses "methods and systems for carrying different signals required for MIMO [multiple input multiple output] communication using a single coaxial cable between two endpoints of a DAS, e.g. between a distribution point and each of the antenna locations."[18] Claim 1 of the '504 patent requires "a single coaxial cable extending for at least part of a path from the first endpoint to a second endpoint of the DAS network," which the court construed to mean "a single coaxial cable connected to an antenna endpoint and extending for at least part of a path to a distribution endpoint of the DAS network, for carrying both uplink and downlink signals."[19] In light of this claim construction, Corning admits that no SOLiD product practices the '504 patent.[20]

The present dispute arises out of a complex series of interactions between the parties to this suit and their corporate affiliates. Corning, an Israeli corporation, is the successor of an Israeli corporation named MobileAccess Networks, Ltd.[21] Corning is the wholly-owned subsidiary of Corning Optical Communications Wireless, Inc., which succeeds an American company named MobileAccess Networks, Inc.[22] Similarly, Reach grew out of Tri-Power Group, Inc.[23]

---

[13] *See* Docket No. 274-3.

[14] *See* Docket No. 274-4.

[15] *See* Docket No. 274-5.

[16] *See id.*

[17] *See* Docket No. 177-2 at 1.

[18] *Id.* at col. 1:62-66.

[19] *See* Docket No. 198 at 2.

[20] *See* Docket No. 314 at 3:10-20.

[21] *See* Docket No. 258-83.

[22] *See* Docket No. 258-23 at 12:23-13:10; Docket No. 258-62 at 2; Docket No. 275-61 at 12-13.

Case No. 5:14-03750-PSG
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1    Tri-Power had a distribution agreement to sell MobileAccess DAS products, but the

2 relationship soured after Tri-Power fell behind in its payments to MobileAccess and started to sell

3 SOLiD DAS products.[24]  In June 2009, Tri-Power, through its attorney, sent a letter to

4 MobileAccess alleging that MobileAccess employees had "made statements to end users . . . that

5 were designed to harm TriPower's business reputation," including the claim that "MobileAccess

6 had commenced litigation against TriPower and SOLiD for patent infringement."[25]  MobileAccess

7 told Tri-Power that it was "not in the process of filing a patent infringement lawsuit against Tri-

8 Power [but] reserve[d] the right to do so should we become aware of infringement."[26]  On July 6,

9 2009, MobileAccess and Tri-Power signed a settlement agreement which included the following

10 term:

11      MobileAccess confirms that it has not filed, nor is actively pursuing, any
        litigation against TriPower at the present time, but does reserve the right to
12      pursue TriPower in the case is [sic] becomes aware of grounds to do so.
        MobileAccess will notify TriPower if it becomes aware of grounds for litigation,
13      unless it feels that such notification would prejudice the company.[27]

14 In light of this contract term, Reach's CEO Seth Buechley, who had been a shareholder in Tri-

15 Power, believed that no patent infringement suit was forthcoming.[28]  There is no evidence that

16 either side in this discussion identified a specific patent.

17      Starting in early 2009, MobileAccess conducted a detailed competitive analysis of SOLiD's

18 Alliance DAS products.  As part of this review, MobileAccess engineers collected and reviewed

19

20 [23] *See* Docket No. 258-28 at 290:3-8, 294:10-295:3.  The parties dispute the extent of Reach's connection with Tri-Power.  Reach and Tri-Power have the same three shareholders, and Reach took over Tri-Power's entire DAS business.  *See id.* at 294:10-295:3.  Given these connections, the court is satisfied that Reach may assert the equitable defenses available to Tri-Power.  *Cf. Enel Co., LLC v. Schaefer*, Case No. 12-cv-01369, 2013 WL 5727421, at *3-5 (S.D. Cal. Oct. 22, 2013); *Raber v. Pittway Corp.*, Case No. 92-cv-02581, 1994 WL 374542, at *3 (N.D. Cal. July 11, 1994).

22

23 [24] *See* Docket Nos. 258-87, 259-1, 259-3 at 1-2.

24 [25] Docket No. 259-3 at 2.

25 [26] Docket No. 259-5.

26 [27] Docket No. 259-1.

27 [28] *See* Docket No. 258-21 at 170:9-171:7.

28                                              6

Case No. 5:14-03750-PSG
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

publicly available information about the Alliance DAS, inspected it at a trade show and discussed the product's features with Tri-Power.[29]  MobileAccess employees knew about the '837 and '504 patents and had discussed the possibility that SOLiD's products infringed them.[30]  However, it was not until 2011 or 2012 that MobileAccess—which by then had become Corning—acquired a SOLiD DAS product.[31]  Corning brought this suit in 2014.[32]

## II.

This court has jurisdiction under 28 U.S.C. §§ 1331 and 1338.  The parties further consent to the jurisdiction of the undersigned under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).

## III.

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Material facts are those that may affect the outcome of the case.[33]  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.[34]  All evidence must be viewed in the light most favorable to the non-moving party.  At this stage, a court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial."[35]  Initially, the moving party bears the burden to show that no genuine issue of material fact exists.[36]  If this burden is met, the burden

---

[29] *See* Docket No. 258-15 at 100:22-102:10, 124:21-125:19; Docket No. 258-17 at 67:9-71:12; Docket No. 258-23 at 102:21-103:4; Docket No. 258-85; Docket No. 258-87.

[30] *See* Docket No. 258-36 at 34:20-35:17; Docket No. 258-54.

[31] *See* Docket No. 40:24-41:11.

[32] *See* Docket No. 1.

[33] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted.").

[34] *See id.*

[35] *House v. Bell*, 547 U.S. 518, 559-60 (2006).

[36] *See Celotex Corp. v. Caltrett*, 477 U.S. 317, 323-24 (1986).

Case No. 5:14-03750-PSG
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT

1    shifts to the non-moving party.[37]   Applying these standards to the claims, defenses and record of

2    this case, the court is persuaded that summary judgment is appropriate, but only as to certain

3    issues.

4            ***First***, Corning has presented no argument that SOLiD's Alliance DAS products infringe the

5    '504 patent under the court's construction of Claim 1 of that patent.[38]   In the absence of any such

6    argument, the court GRANTS Defendants' motion for summary judgment of no infringement of

7    the '504 patent.[39]

8            ***Second***, there is no triable issue of fact as to whether Corning is eligible for pre-suit

9    damages under 35 U.S.C. § 287(a).   The statute applies if Corning made, sold or offered to sell in

10   the United States, or imported into the United States, products practicing the '837 patent.[40]   If this

11   condition is met, in order to receive damages for infringement prior to filing suit, Corning must

12   show either that it marked the products it sold—which it admits it did not do[41]—or that it provided

13   notice of infringement to the accused infringer.[42]   The notice must inform the recipient "of the

14   identity of the patent and the activity that is believed to be an infringement."[43]   The notice must

15   come from the patentee itself; even "notice from someone closely associated with the patentee does

16   not satisfy § 287(a)."[44]   The patentee bears the burden of proving that it has complied with the

17   requirements of § 287(a).[45]

18   _____

19   [37] *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 630, 630 (9th Cir. 1987).

20   [38] *See* Docket No. 275-4.

21   [39] As noted above, the court previously denied Defendants' motion for summary judgment of no
     infringement of the '837 patent.  *See* Docket No. 303 at 1.

22   [40] *See* 35 U.S.C. § 287(a).

23   [41] *See* Docket No. 259-21 at 6.

24   [42] *See Lans v. Digital Equipment Corp.*, 252 F.3d 1320, 1326-28 (Fed. Cir. 2001).

25   [43] *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1469-70 (Fed. Cir. 1997

26   [44] *Lans*, 252 F.3d at 1327.

27   [45] *See Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1446 (Fed. Cir. 1998).

28
                                                      8
     Case No. 5:14-03750-PSG
     ORDER RE: MOTIONS FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

On the evidence in the record, no reasonable jury could find that Corning has carried that burden. Corning argues that it has not sold or imported any patented products in this country, so it need not comply with § 287(a). This is not plausible, however, in light of Corning's own admissions. In its infringement contentions, Corning specifically alleges that several of its products practice multiple claims of the '837 patent,[46] and in seeking damages for lost profits, Corning claims that it would have earned more revenue in the United States from selling these products but for Defendants' infringement. It cannot protest simultaneously that it was not selling any products here and that it lost revenue from not selling more of them.

Corning's arguments on notice fare no better. It points only to evidence that Tri-Power executives had heard stirrings from their own customers that MobileAccess might bring a patent infringement suit.[47] But Corning provides no proof at all from which a jury could conclude that the notice actually came from MobileAccess or that the notice unambiguously informed Defendants (or even Tri-Power) of the identity of the patent. In fact, three MobileAccess and Corning executives testified that they did not know of anyone from MobileAccess or Corning giving any notice of infringement to Tri-Power, Reach or SOLiD.[48] The court GRANTS Defendants' motion for summary judgment that Corning is not entitled to pre-suit damages.

There are, however, triable issues of fact with respect to each of Defendants' equitable defenses. Equitable estoppel bars Corning's claims only if: (1) Corning's conduct supported Defendants' inference that Corning did not intend to enforce its patents against Defendants; (2) Defendants substantially relied on Corning's misleading conduct and (3) Defendants would be materially prejudiced if Corning is allowed to proceed.[49] The court also must "take into

---

[46] *See* Docket No. 218-2 at 5.

[47] *See* Docket Nos. 258-99, 259-9.

[48] *See* Docket No. 258-30 at 175:21-179:18; Docket No. 258-36 at 158:18-159:2; Docket No. 258-38 at 128:25-131:9, 175:16-25.

[49] *See A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1042-43 (Fed. Cir. 1992) (en banc).

Case No. 5:14-03750-PSG
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT

consideration any other evidence and facts respecting the equities of the parties."[50]  To prove

misleading conduct, Defendants refer the court to Tri-Power's settlement with MobileAccess,

whereby MobileAccess represented that it was not pursuing litigation against Tri-Power at the

time.[51]  To prove reliance, Defendants cite Reach President Buechley's statement, in a deposition

taken during this litigation, that "shareholders of Reach relied entirely upon" that representation

from MobileAccess.[52]  And to prove prejudice, Defendants point to their economic investments

and to the testimony of MobileAccess executives that they destroyed or threw away documents that

may have been relevant to the current litigation.[53]

Genuine disputes of fact nevertheless remain.  For example, the extent to which the

settlement agreement misled Tri-Power with regard to its liability for infringing the '837 patent is

unresolved.  In the agreement, MobileAccess explicitly reserved the right to bring suit for patent

infringement were it to become aware of infringement.  Although MobileAccess nominally agreed

to notify Tri-Power if it became aware of grounds for litigation, the remainder of the sentence

containing that clause—"unless [MobileAccess] feels that such notification would prejudice the

company"—left a gaping loophole.  Moreover, neither this communication, nor any others between

MobileAccess and Tri-Power, ever explicitly mentioned the '837 and '504 patents.[54]  Likewise,

there is a genuine dispute about whether Defendants relied on the assurances from MobileAccess.

Buechley's testimony does carry some weight, but the vagueness of the agreement itself

undermines the credibility of his statement that he and Reach relied on it.  The balance of the

evidence at trial may show that this reliance was unreasonable.  Defendants also have not proven

prejudice to the requisite level of certainty, especially whether Corning employees' alleged

---

[50] *Id.* at 1043.

[51] *See* Docket No. 259-1.

[52] *See* Docket No. 258-21 at 170:21-171:2.

[53] *See* Docket No. 258-36 at 27:3-31:11; Docket No. 258-38 at 15:4-18:14.

[54] *Cf. Aukerman*, 960 F.2d at 1042 ("It is clear, thus, that for equitable estoppel the alleged infringer cannot be unaware—as is possible under laches—of the patentee and/or its patent.").

Case No. 5:14-03750-PSG
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT

destruction of documents affected the Defendants' ability "to present a full and fair defense on the merits."[55]  Nor have Defendants yet conclusively shown, aside from the aforementioned statement from Buechley, that they would not have invested so heavily in expanding their business if not for the settlement agreement with MobileAccess.

Defendants' case for summary judgment on laches fails in much the same way.[56]  For a patent infringement claim to be barred for laches, the defendant must show that the plaintiff delayed in bringing suit, that the delay was unreasonable and that the delay caused prejudice to the defendant.[57]  Here, Defendants have established that Corning, or its predecessor MobileAccess, performed a competitive analysis of the Alliance DAS in 2009.  They have also shown that MobileAccess employees were aware of the patents in suit.  What they have not yet proven, however, is that Corning had "actual or constructive knowledge of an act of infringement."[58]  In other words, Defendants have not proven that Corning knew—and not just guessed—that the Alliance DAS infringed on the '831 patent.[59]  Corning did not acquire an Alliance DAS until 2011 or 2012.  Given the high standards for summary judgment, the court cannot impute constructive knowledge of patent infringement to Corning based only on the secondhand information it had gathered before then.

---

[55] *Id.* at 1033.

[56] Following the Supreme Court's decision in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962 (2014), which held that laches could not bar a copyright infringement claim for damages, the Federal Circuit has granted rehearing *en banc* to decide whether the laches defense still applies to bar damages for patent infringement.  *See SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, Case No. 13-1564, Docket No. 76 (Fed. Cir. Dec. 30, 2014).  For the purposes of this order, the court assumes that it does.

[57] *Aukerman*, 960 F.2d at 1032.

[58] *Intirtool, Ltd. v. Texar Corp.*, 369 F.3d 1289, 1297-98 (Fed. Cir. 2004).

[59] Somewhat misleadingly, Defendants allege that MobileAccess technical engineer Steve Blum "confirmed at deposition that the 2009 review of the SOLiD product allegedly revealed every element of the '837 Patent claims."  *See* Docket No. 258-3 at 8.  On prodding by Defendants' counsel, Blum—in a 2015 deposition—testified that he saw each element from the '837 patent in technical documents describing the Alliance DAS.  *See* Docket No. 258-17 at 95:23-99:10.  There is no indication that Blum knew in 2009 that the Alliance DAS infringed the '837 patent, or even that the '837 patent existed.

Case No. 5:14-03750-PSG
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT

1    Defendants also have not established to the level of certainty required at this stage that

2   Corning's five-year delay was unreasonable.  Even assuming that MobileAccess knew about

3   Defendants' patent infringement in 2009, and that this knowledge can be ascribed to Corning for

4   the purposes of laches, Defendants offer no evidence as to why Corning should have brought suit

5   sooner.  Corning only acquired MobileAccess and the patents in suit in 2011.[60]  As Corning argues,

6   a company trying to sell itself reasonably may have desisted from filing suit, and a new acquirer

7   reasonably may have waited to understand the market.  Further, Corning was engaged in other

8   litigation over the next few years.[61]  The Federal Circuit in *Aukerman* held that this kind of

9   litigation activity could overcome the presumption of laches for a six-year delay in filing suit.[62]

10   There are also triable issues of fact as to whether Corning may be awarded lost profits.

11   Defendants are right that Corning is not entitled to damages from related companies,[63] but that is

12   not what Corning seeks.  Instead, Corning alleges that Defendants' infringement affected the

13   revenues Corning—and only Corning—would have earned absent the infringement.[64]  Specifically,

14   Corning has presented a theory of damages using an incremental profit approach, which involves

15   calculating the total revenue that Corning would have generated from additional sales and

16   deducting the incremental costs that it would have incurred in the process.[65]  Defendants state—

17   correctly—that Corning does not sell DAS products directly to end customers in the United

---

[60] *See* Docket No. 258-82.

[61] *See* Docket No. 258-80; Docket No. 46-1 at Ex. 5.

[62] *See Aukerman*, 960 F.3d at 1039.

[63] *See Poly-Am., L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1311 (Fed. Cir. 2004) (holding that the patentee could "recover only its own lost profits," not those of its corporate sibling).

[64] Defendants cite repeatedly to a statement by Corning's damages expert, Michele Riley, that she did not "calculate [Corning's] lost profits by itself."  Docket No. 258-34 at 230:3-6.  But the context to that statement shows that Riley may have meant that she had to take into account the activities of Corning's American distributor to make an accurate calculation of Corning's lost sales. *See* Docket No. 275-62 at 230:14-18.  Riley testified that her final damages calculation included only the damages that she believed had accrued to Corning itself. *See* Docket No. 275-61 at 4, 7; Docket No. 275-62 at 228:24-229:16.

[65] *See* Docket No. 259-35 at 89-91.

Case No. 5:14-03750-PSG
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

States.[66]  But Corning's American parent does, and Corning derives 95% of its revenue from that sales channel.[67]

In lost profits cases involving related companies, the Federal Circuit has required exactly what Corning alleges: the loss of profits that would have "flowed inexorably" to the patentee.[68] For example, Defendants cite to *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*[69]  In that case, the patentee claimed lost profits from "true-up payments" that the related company would have sent to the patentee, and the Federal Circuit refused to award these damages.[70]  The problem was not the sales arrangement itself but the fact that "[t]he true-up payments . . . appear[ed] to result from a variety of transactions."[71]  The patentee failed to prove "what percentage of the true-ups was attributable to [royalty] payments as opposed to payments on unrelated transactions."[72]  Defendants also cite to another Federal Circuit case, *Mars, Inc.*, cited above.  There, the patentee, which did not manufacture or sell any products, claimed that it nonetheless was entitled to lost profits damages because the profits from its wholly-owned subsidiary would have "flowed inexorably" to the patentee.[73]  The Federal Circuit found that the subsidiary "was required to make . . . royalty payments whether or not it made any profits."[74]  As a result, lost sales for the subsidiary did not necessarily result in lost revenues for the patentee.

---

[66] *See* Docket No. 279-2 at 14.

[67] *See* Docket No. 275-61 at 13-14.

[68] *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1367 (Fed. Cir. 2008).

[69] 778 F.3d 1365 (Fed. Cir. 2015).

[70] *See id.* at 1376-77.

[71] *See id.* at 1377.

[72] *See id.*

[73] *See Mars, Inc.*, 527 F.3d at 1367.

[74] *Id.*

13

Case No. 5:14-03750-PSG
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1    In contrast, Corning has alleged lost profits only from the sales that it would have made, not

2    its parent.[75]  The cases above do set a high bar for Corning to clear at trial.  Corning will have to

3    prove that its transfer pricing arrangement guarantees that sales by its American parent result in an

4    inexorable flow of revenues to Corning.[76]  But, for the purposes of summary judgment, Corning

5    has met its burden.

6        There also are triable issues of fact regarding whether the prior art references that

7    Defendants have provided either anticipate or render obvious the relevant claims of the '837 patent.

8    Corning urges the court to find that Defendants' expert Anthony Acampora fails to provide more

9    than conclusory opinions that any of the four prior art references primarily at issue here—Russell,[77]

10   Hamilton-Piercy,[78] Tang,[79] and Bodell[80]—anticipates the '837 patent.  Corning also contends that

11   Acampora's expert report simply states that these and other references render the '837 patent

12   obvious, instead of explaining how they do so.  Indeed, merely conclusory expert opinions on

13   anticipation or obviousness are not sufficient to withstand summary judgment.[81]  The expert must

14   "quote[] the particular portions of the references that [a]re relevant for each of the claim

15   limitations" and, "for each claim limitation, . . . connect[] it with disclosures in the prior art that he

16   believe[s] taught each particular limitation."[82]  But Acampora has done at least that.

17       Many of Corning's arguments against anticipation rest on the claim limitations "low

18   frequency control signal" and "low frequency data signal," which appear in Claim 1 and Claim 3 of

19

20   [75] See Docket No. 275-61 at 33-35.

21   [76] See Mars, Inc., 778 F.3d at 1367.

22   [77] See Docket No. 274-2.

23   [78] See Docket No. 274-3.

24   [79] See Docket No. 274-4.

25   [80] See Docket No. 274-5.

26   [81] See Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc., 249 F.3d 1341,
     1353 (Fed. Cir. 2001).

27   [82] Med. Instrumentation & Diagnostics Corp. v. Elekta AB, 344 F.3d 1205, 1220 (Fed. Cir. 2003).

28
                                              14
     Case No. 5:14-03750-PSG
     ORDER RE: MOTIONS FOR SUMMARY JUDGMENT

the '837 patent respectively.[83]   The court construed both of these terms to mean "a signal used to convey [control information or data] and having a lower frequency than the analog communications signals."[84]   Corning argues that, although several of Defendants' allegedly anticipatory references disclose control and data signals, they do not specify explicitly that these signals must have frequencies below the analog communications signals they accompany.  But anticipation does not turn only on the phrasing of the prior art references at issue.  Instead, "'the dispositive question regarding anticipation is whether one skilled in the art would reasonably understand or infer from the prior art reference's teaching' that every claim element was disclosed in that single reference."[85]   A person of ordinary skill in the art may well have understood that those signals would have to be at relatively lower frequencies.  Acampora makes exactly this claim,[86] and he explains why.  He points to specific elements of the prior art that correspond to every limitation, and he provides his expert opinion that one of ordinary skill would read each of those elements to disclose each of those limitations.  At this stage, the Federal Circuit requires no more.[87]   Whether these references teach each limitation of the claims is a genuine dispute of fact for the jury to resolve.

As to obviousness, Acampora repeatedly describes how and why a person of ordinary skill in the art would combine various prior art inventions in the same way the '837 patent teaches.[88] Corning may disagree with Acampora's opinions, but Defendants certainly have produced enough evidence to create a genuine issue of fact.

---

[83] Acampora and the parties' papers refer to these limitations as "1[p]" and "3[p]."  *See* Docket No. 274-1 at 26.

[84] Docket No. 294 at 13.

[85] *Dayco Products, Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1368 (Fed. Cir. 2003) (emphasis removed) (quoting *In re Baxter Travenol Labs.*, 952 F.2d 388, 390 (Fed. Cir. 1991)).

[86] *See* Docket No. 274-1 at 50-53, 65, 68, 80-81, 93, 96-97.

[87] *See Med. Instrumentation*, 344 F.3d at 1220.

[88] *See* Docket No. 274-1 at 50-55, 65-66, 69-71, 73-76, 79-80, 82-83, 86-88, 91-95, 98-99.

Case No. 5:14-03750-PSG
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

**SO ORDERED.**

Dated: September 16, 2015

_____
PAUL S. GREWAL
United States Magistrate Judge

Case No. 5:14-03750-PSG
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT