UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CORNING OPTICAL COMMUNICATIONS WIRELESS LTD., <br><br> Plaintiff, <br><br> v. <br><br> SOLID, INC., et al., <br><br> Defendants. | Case No. 5:14-cv-03750-PSG <br><br> **ORDER DENYING MOTION FOR RECONSIDERATION OF SUMMARY JUDGMENT ORDER** <br><br> **(Re: Docket No. 356)** |

To appreciate how long our nation's patent laws have included a marking requirement, consider this: John Tyler was the President who signed it into law.[1] And yet in the years since 1842, it appears no appellate court has considered exactly what it takes to trigger that requirement by making, selling, offering to sell or importing.

Meanwhile, this marks the undersigned's second opportunity in less than a week.

The reason for this spate of Section 287(a)[2] statutory consideration is a motion for reconsideration by Plaintiff Corning Optical Communications Wireless Ltd. Corning asks the court to revisit its recent order granting summary judgment to Defendants SOLiD, Inc. and Reach

---

[1] *See* Act of Aug. 29, 1842, ch. 263, § 6, 5 Stat. 543, 544-45 (1842).

[2] 35 U.S.C. § 287(a).

1

Case No. 5:14-cv-03750-PSG
ORDER DENYING MOTION FOR RECONSIDERATION OF SUMMARY JUDGMENT ORDER

Holdings LLC on the issue of pre-suit damages.[3] The court held that no reasonable jury could find that Corning marked its products or otherwise complied with Section 287(a), and that there is no genuine dispute that that Corning's pre-suit damages claim required compliance because Corning imported patented articles into the United States. More specifically, Corning asks that the court reconsider its holding that there is no genuine dispute that Section 287(a) applies to Corning's claims in this case.[4] For the reasons below, the court DENIES Corning's motion.

In their original motion, Defendants produced unrebutted evidence, in the form of a transfer pricing analysis and the deposition of Corning's Rule 30(b)(6) witness on the topic, of a typical transaction under Corning's arrangement with its American parent company.[5] A sale of an accused distributed antenna system to an American end customer starts with the customer issuing a purchase order to Corning's American parent.[6] The parent company then issues a purchase order to Corning, and Corning in turn issues another purchase order to a third-party manufacturer.[7] The manufacturer ships the product directly to the end customer in the United States.[8] Corning takes title to a product when it leaves the manufacturer and retains it until it reaches the end customer.[9] Immediately before title transfers to the customer, Corning's American parent takes "flash title," temporary legal ownership that lasts only a split second.[10]

---

[3] *See* Docket No. 347; Docket No. 356.

[4] *See* Docket No. 347 at 8-9; Docket No. 356. Corning does not seek reconsideration of the portion of the court's order holding that no reasonable jury could find that Corning marked its products or provided actual notice to Defendants of their infringement. *See* Docket No. 347 at 8-9.

[5] Corning, the plaintiff here, is headquartered in Israel, but its parent company, which is not a party to this suit, is based in Virginia. *See* Docket No. 258-66 at 11-12.

[6] *See* Docket No. 258-26 at 20:7-22; Docket No. 258-66 at 19.

[7] *See* Docket No. 258-26 at 20:25-21:2, 21:17-22:3; Docket No. 258-66 at 19.

[8] *See* Docket No. 258-26 at 21:17-22:3; Docket No. 258-66 at 19.

[9] *See* Docket No. 258-26 at 22:16-23:6, 25:13-26:15; Docket No. 258-66 at 19.

[10] *See* Docket No. 258-26 at 25:13-26:15; Docket No. 258-66 at 19.

Corning now argues that, under these facts, it is the American parent, and not the plaintiff and patentee, that imports DAS products practicing the '837 patent. It argues further that the court erred in finding that the evidence above indisputably shows that Corning, and not its parent, made these sales in the United States. As for importation, Corning says the court did not mention that possibility in its order, and Defendants did not satisfy their burden of proving that no reasonable juror could find that Corning imported products into the United States.

As the court and the parties have found, there is very little case law addressing what factors determine whether an entity has imported or sold a product here for the purposes of Section 287(a). But the Federal Circuit has provided substantial guidance on the interpretation of the corresponding terms in 35 U.S.C. § 271(a).[11] Unless there is reason to believe otherwise, courts generally presume that words carry the same meaning when they appear in different sections of the same statute.[12] Deferring to this canon, the court must look to the precedent on Section 271(a) as instructive on the issue of how to interpret Section 287(a).

After reviewing this precedent and the undisputed facts submitted on summary judgment, the court is unpersuaded to reconsider its earlier ruling. For at least a substantial percentage of its transactions, the plaintiff patentee holds legal title to its DAS products until a split second before they reach their end customers in the United States. Nothing Corning properly submits suggests otherwise. In *Nuance Communications*, a foreign company sent software products accused of infringing a patent to a related American company for distribution in the United States.[13] The foreign company retained ownership of the products even after they entered the United States.[14] Under these facts, the Federal Circuit held that the foreign company imported these products under

---

[11] *See, e.g.*, *Carnegie Mellon Univ. v. Marvell Tech. Group, Ltd.*, Case No. 2014-1492, 2015 WL 4639309, at *21 (Fed. Cir. Aug. 4, 2015); *Nuance Commc'ns v. Abbyy Software House*, 626 F.3d 1222, 1233 (Fed. Cir. 2010); *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1376-77 (Fed. Cir. 2005).

[12] *See Kirtsaeng v. John Wiley & Sons, Inc.*, 133 S. Ct. 1351, 1362 (2013).

[13] *See* 626 F.3d at 1228-29, 1233.

[14] *See id.* at 1233.

3
Case No. 5:14-cv-03750-PSG
ORDER DENYING MOTION FOR RECONSIDERATION OF SUMMARY JUDGMENT ORDER

Section 271(a).[15]  Similarly, in *Largan Precision Co. v. Genius Electronic Optical Co.*, a foreign company shipped samples of its allegedly infringing products directly into the United States.[16]  The district court relied in part on the fact that title transferred in the United States in finding that this constituted importation into the United States under Section 271(a).[17]  It is undisputed that Corning ships products into the United States, and in fact ships them directly to the end customers who ordered them from Corning's American parent.  Corning therefore imports these products into the United States, and it was required to mark them under Section 287(a).

At the hearing on the motion for reconsideration, Corning presented the court with a United States customs declaration averring that Corning's American parent imported DAS products, not Corning.  The customs declaration does not change the finding above.  First of all, Defendants point out, without any challenge by Corning, that Corning has never produced this document in discovery, much less presented it in opposition to the motion for summary judgment or at the hearing on that motion.  Even if the court were to consider it as evidence, it would only show that Corning's American parent was listed as the importer for one shipment of goods—and that too under trade law and not patent law.  It does not contradict the remainder of the evidence, both from the transfer pricing analysis and from deposition testimony, that the bulk of Corning's sales fit the pattern described above.

Corning's sales also occur in the United States.  Again, the fact that legal title passes buttresses that conclusion, even if it is not the entire inquiry.  In the context of Section 271(a), the Federal Circuit has held that "the location of a 'sale' . . . is not necessarily where legal title passes."[18]  Factors relevant to the location of a sale under Section 271(a) include where the title transfer took place, the terms of the sale agreement, where the parties formed that agreement, the

---

[15] *See id.*

[16] *See* Case No. 13-cv-02502, 2015 WL 1476902, at *6-7 (N.D. Cal. Mar. 31, 2015).

[17] *See id.* at *7.

[18] *MEMC*, 420 F.3d at 1377.

4
Case No. 5:14-cv-03750-PSG
ORDER DENYING MOTION FOR RECONSIDERATION OF SUMMARY JUDGMENT ORDER

location of delivery and where payment occurred.[19]  Here, the purchase orders from the end customer came from the United States.  So did the purchase order to Corning.  Corning therefore sold the products to an American parent for distribution to American end customers.  Finally, payment went from the United States to Corning according to a transfer pricing arrangement.

This is far different from the situations in *MEMC* and *Halo Electronics*.  In *MEMC*, the defendant, SUMCO, manufactured the accused products overseas in response to a purchase order from a foreign company, Samsung Japan.[20]  The products only entered the United States when Samsung Japan sent the products, using a third-party shipper, to its sibling company here.[21]  Samsung Japan paid SUMCO for the wafers after they were delivered.[22]  Similarly, in *Halo Electronics*, the relevant products "were manufactured, shipped, and delivered to buyers abroad."[23]  The accused infringer received purchase orders and payments from contract manufacturers based overseas, so that the two parties agreeing to the sale contract were both foreign entities.[24]  The only connection with the United States was that "pricing negotiations and certain contracting and marketing activities" occurred here.[25]  The products never entered the United States, even in transit.[26]  By contrast, the sales at issue here involved an American party, and Corning delivered the products to the United States.  Considering all the circumstances of these sales, there is no genuine dispute that they occurred in the United States.

**SO ORDERED.**

---

[19] *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 769 F.3d 1371, 1379 (Fed. Cir. 2014); *see also Carnegie Mellon*, 2015 WL 4639309, at *21.

[20] *See MEMC*, 420 F.3d at 1376-77.

[21] *See id.*

[22] *See id.* at 1377.

[23] 769 F.3d at 1379.

[24] *See id.*

[25] *Id.*

[26] *See id.* (citing *Halo Elecs., Inc. v. Pulse Eng'g, Inc.*, 810 F. Supp. 2d 1173, 1207 (D. Nev. 2011)).

Dated: September 28, 2015

_____
PAUL S. GREWAL
United States Magistrate Judge