UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| CORNING OPTICAL COMMUNICATIONS WIRELESS LTD., | ) ) ) | Case No. 5:14-cv-03750-PSG |
| Plaintiff, | ) ) | **[PROPOSED] FINAL JURY INSTRUCTIONS** |
| v. | ) ) | |
| SOLID, INC., et al., | ) ) | |
| Defendants. | ) ) ) | |

United States District Court
For the Northern District of California

# 1. EXPERT OPINION

Some witnesses, because of education or experience, were permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reason given for the opinion, and all the other evidence in the case.

Case No. 5:14-cv-03750-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

## 2. DEPOSITION IN LIEU OF LIVE TESTIMONY

As I have previously explained, a deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, or because the parties have agreed not to call an individual live, the deposition of that person may be used at the trial.

You should consider deposition testimony, presented to you in court by videotape or read to you from a deposition transcript in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

Case No. 5:14-cv-03750-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

# 3. IMPEACHMENT EVIDENCE—WITNESS

The evidence that a witness testified differently on a prior occasion may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

Case No. 5:14-cv-03750-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

United States District Court
For the Northern District of California

**4. DEMONSTRATIVE EVIDENCE**

During the trial, materials have been shown to you to help explain testimony or other evidence in the case. Other materials have also been shown to you during the trial, but they have not been admitted into evidence. You will not be able to review them during your deliberations because they are not themselves evidence or proof of any facts. You may, however, consider the testimony given in connection with those materials.

**5. CONFIDENTIALITY**

During this trial, the attorneys have presented confidential information belonging to one of the parties as evidence. You are not to discuss or communicate any confidential evidence presented during this trial to anyone aside from the other jurors during deliberations, either during the trial or after the trial.

Case No. 5:14-cv-03750-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

# 6. SUMMARY OF CONTENTIONS

I will now summarize for you each side's contentions in this case. I will then tell you what each side must prove to win on each of its contentions.

Corning Wireless Ltd. (hereinafter "Corning") seeks money damages from SOLiD and Reach for infringing U.S. Patent No. 5,969,837, which I will refer to as the '837 patent. There is no dispute that Corning owns the '837 patent. Corning accuses SOLiD and Reach of making, using, selling, offering to sell, or importing ALLIANCE Multi-Carrier Distributed Antenna System products, which I may refer to as the "accused products" in the United States. Corning also accuses SOLiD and Reach of inducing or contributing to others' infringement of the '837 patent. Corning contends also that SOLiD and Reach's infringement has been willful. SOLiD and Reach deny that they have infringed the asserted claims of the '837 patent and argue that, in addition, those claims are invalid.

Your job is to decide whether SOLiD and Reach have infringed the asserted claims of the '837 patent and whether each asserted claim is invalid. If you decide that any claim has been infringed and is not invalid, you will then need to decide the money damages to award to Corning for the infringement. You will also need to make a finding as to whether any infringement was willful. If you decide that any infringement was willful, that decision should not affect any damage award you give. I will take willfulness into account later.

# 7. INTERPRETATION OF CLAIMS

Before you decide whether SOLiD or Reach has infringed the asserted claims or whether the asserted claims are invalid, you will need to understand the patent claims. As I will further explain, the patent claims are numbered sentences at the end of the patent that describe the boundaries of the patent's protection. It is my job as judge to explain to you the meaning of any language in the claims that needs interpretation.

I have interpreted the meaning of some of the language in the patent claims involved in this case. You have been given a document in your notebooks that contains these meanings. You must accept those interpretations as correct. My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity. The decisions regarding infringement and invalidity are yours to make. For claim language where I have not provided you with any meaning, you should apply the claim language's plain and ordinary meaning.

Case No. 5:14-cv-03750-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

**United States District Court**
For the Northern District of California

## 8. HOW A CLAIM DEFINES WHAT IT COVERS

I will now explain how a claim defines what it covers.

A claim sets forth, in words, a set of requirements.  Each claim sets forth its requirements in a single sentence.  If a device, system, or method satisfies each of these requirements, then it is covered by the claim.

There can be several claims in a patent.  Each claim may be narrower or broader than another claim by setting forth more or fewer requirements.  The coverage of a patent is assessed claim-by-claim. In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations."  When a thing (such as a product or method) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product or method where each of the claim elements or limitations is present in that product or method.

As I just instructed you, there are certain specific terms that I have defined or that the parties have agreed upon and you are to apply the definitions that I provide to you.  By understanding the meaning of the words in a claim and by understanding that the words in a claim set forth the requirements that a product or method must meet in order to be covered by that claim, you will be able to understand the scope of coverage for each claim.  Once you understand what each claim covers, then you are prepared to decide the issues that you will be asked to decide, such as infringement and invalidity.

Case No. 5:14-cv-03750-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

**9. INFRINGEMENT—BURDEN OF PROOF**

I will now instruct you on the rules you must follow in deciding whether Corning has proven that SOLiD or Reach have infringed one or more of the asserted claims.  A patent may be infringed directly or indirectly.  I will explain the difference shortly.  To prove infringement of any claim, Corning must persuade you that it is more likely than not that SOLiD or Reach infringed that claim.

Case No. 5:14-cv-03750-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**10. DIRECT INFRINGEMENT**

A patent's claims define what is covered by the patent.  A product directly infringes a patent if it is covered by at least one claim of the patent.

Deciding whether a claim has been directly infringed is a two-step process.  The first step is to decide the meaning of the patent claim.  I have already made this decision, and I have already instructed you as to the meaning of the asserted patent claims.  The second step is to decide whether SOLiD or Reach has made, used, sold, offered for sale, or imported within the United States a product covered by an asserted claim.  If either party has, then that party infringes.  You, the jury, make this decision.

With one exception, you must consider each of the asserted claims of the patent individually, and decide whether the accused products infringe that claim.  The one exception to considering claims individually concerns dependent claims.  A dependent claim includes all of the requirements of a particular independent claim, plus additional requirements of its own.  As a result, if you find that an independent claim is not infringed, you must also find that its dependent claims are not infringed.  On the other hand, if you find that an independent claim has been infringed, you must still decide whether the additional requirements of its dependent claims have also been infringed.

You have heard evidence about systems including Corning's commercial products and systems including SOLiD and Reach's accused products.  However, in deciding the issue of infringement, you may not compare systems including SOLiD and Reach's accused products to systems including Corning's commercial products.  Rather, you must compare systems including SOLiD and Reach's accused products to the asserted claims when making your decision regarding infringement.

Whether or not SOLiD or Reach knew its products infringed or even knew of the patent does not matter in determining direct infringement.

The following instruction will provide more detail on the type of direct infringement that Corning claims—literal infringement.

Case No. 5:14-cv-03750-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

1

## 11. LITERAL INFRINGEMENT

2

To decide whether SOLiD or Reach's accused products literally infringe an asserted claim, you
must compare the products to the claims and determine whether every requirement of the claim is
in the accused products.  If so, the accused product literally infringes that claim.  If, however, the
accused product does not have every requirement in the patent claim, the accused product does not
literally infringe that claim.  You must decide literal infringement for each asserted claim
separately.  A claim is infringed as long as every requirement in the claim is present in SOLiD or
Reach's accused product.  The fact that the alleged infringer's product also includes other parts or
steps will not avoid infringement, as long as it has every requirement in the patent claim.

3

4

5

6

7

8

9

10

**United States District Court**
For the Northern District of California

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 5:14-cv-03750-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

## 12. CONTRIBUTORY INFRINGEMENT

Corning also argues that SOLiD and Reach have contributed to infringement by others. Contributory infringement may arise when someone supplies something that is used to infringe one or more of the patent claims.

In order for there to be contributory infringement, someone other than the alleged contributory infringer must directly infringe a claim of the '837 Patent; if there is no direct infringement by anyone, there can be no contributory infringement.

If you find someone has directly infringed the '837 Patent, then contributory infringement exists if:

> 1.   The contributory infringer (SOLiD or Reach) supplied an important component of the infringing part of the product;

> 2.   The component is not a common component suitable for non-infringing use; and

> 3.   The contributory infringer supplied the component with knowledge of the '837 Patent and knowledge that the component was especially made or adapted for use in an infringing manner.

A "common component suitable for non-infringing use" is a component that has uses other than as a component of the patented product, and those other uses are not occasional, farfetched, impractical, experimental or hypothetical.

Case No. 5:14-cv-03750-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

## 13. INDUCING PATENT INFRINGEMENT

Corning also argues that SOLiD and Reach each actively induced another to infringe the '837 Patent.  In order for SOLiD or Reach to have induced infringement, someone other than the alleged inducer must directly infringe a claim of the '837 Patent; if there is no actual direct infringement by someone other than the alleged inducer, there can be no induced infringement.

In order to be liable for inducing infringement, SOLiD or Reach must:

    1.  have intentionally taken action that actually induced direct infringement;

    2.  have been aware of the '837 Patent; and

    3.  have known that the acts it was causing would infringe the patent.

SOLiD or Reach may be considered to have known that the acts it was causing would infringe the '837 Patent if it subjectively believed there was a high probability that the direct infringer's product was patented and nevertheless deliberately took steps to avoid learning that fact, in other words, willfully blinded itself to the infringing nature of the direct infringer's acts.

Case No. 5:14-cv-03750-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

United States District Court
For the Northern District of California

**United States District Court**
**For the Northern District of California**

# 14. WILLFUL INFRINGEMENT

In this case, Corning argues that SOLiD and Reach willfully infringed the '837 Patent.

To prove willful infringement, Corning must first persuade you that the alleged infringer infringed a valid and enforceable claim of the '837 Patent.  The requirements for proving such infringement were discussed in my prior instructions.

In addition, to prove willful infringement by SOLiD or Reach, Corning must persuade you that it is highly probable that SOLiD or Reach acted with reckless disregard of the claims of Corning's asserted patent.

To demonstrate such "reckless disregard," Corning must persuade you that SOLiD or Reach actually knew, or it was so obvious that SOLiD or Reach should have known, that its actions constituted infringement of a valid and enforceable patent.

In deciding whether SOLiD or Reach acted with reckless disregard for the '837 Patent, you should consider all of the facts surrounding the alleged infringement including, but not limited to, the following factors.

Factors that may be considered as evidence that SOLiD or Reach was not willful include whether they acted in a manner consistent with the standards of commerce for its industry.

Factors that may be considered as evidence that SOLiD or Reach was willful include whether they intentionally copied a product of Corning covered by the patent.

Case No. 5:14-cv-03750-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

### 15. INVALIDITY—BURDEN OF PROOF

I will now instruct you on the rules you must follow in deciding whether SOLiD and Reach have proven that claims 1-8 of the '837 Patent are invalid. Before discussing the specific rules, I want to remind you about the standard of proof that applies to this defense. To prove invalidity of any patent claim, SOLiD and Reach must persuade you that it is highly probable that the claim is invalid.

During this case, SOLiD and Reach have submitted prior art that was not considered by the United States Patent and Trademark Office (PTO) during the prosecution of the '837 Patent, as well as prior art that was considered by the PTO. SOLiD and Reach contend that such prior art invalidates certain claims of the '837 Patent. In deciding the issue of invalidity, you may take into account the fact that prior art was not considered by the PTO when it issued the '837 Patent. Prior art that differs from the prior art considered by the PTO may carry more weight than the prior art that was considered and may make the alleged infringer's burden of showing that it is highly probable that a patent claim is invalid easier to sustain.

Case No. 5:14-cv-03750-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# 16. INVALIDITY—ANTICIPATION

A patent claim is invalid if the claimed invention was not new at the time the application was filed. For the claim to be invalid because it was not new, all of its requirements must have existed in a single device that predates the claimed invention, or must have been described in a single previous publication or patent that predates the claimed invention.  In patent law, these previous devices, publications, or patents are called "prior art references."  If a patent claim is not new we say it is "anticipated" by a prior art reference.

The description in a written reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the field looking at that one reference would be able to make and use the claimed invention.

Here is a list of the ways that SOLiD and Reach can show that a patent claim was not new:

    1.   if the claimed invention was already patented or described in a printed publication anywhere in the world before December 15, 1996.  A reference is a "printed publication" if it is accessible to those interested in the field, even if it is difficult to find, and includes international patent applications, such as PCT applications; or

    2.   if the claimed invention was already described in another issued U.S. patent or published U.S. patent application that was based on a patent application filed before December 15, 1996.

A prior art reference can incorporate by reference portions of another document or an entire prior art reference.  It is a legal issue as to what is incorporated by reference.  In this case, I have found that the prior art reference known as Bodell2 incorporates by reference the prior art reference known as Bodell.  Therefore, you should treat Bodell and Bodell2 as if they were one reference.

Case No. 5:14-cv-03750-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

### 17. INVALIDITY—OBVIOUSNESS

Not all innovations are patentable.  A patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field at the time the claimed invention was made.  This means that even if all of the requirements of the claim cannot be found in a single prior art reference that would anticipate the claim, a person of ordinary skill in the relevant field who knew about all this prior art would have come up with the claimed invention.

SOLiD and Reach assert that claims 1-8 of the '837 Patent are invalid as obvious in view of the prior art.  The ultimate conclusion of whether a claim is obvious should be based upon your determination of several factual decisions.

First, you must decide the level of ordinary skill in the field that someone would have had as of December 15, 1996.  In deciding the level of ordinary skill, you should consider all the evidence introduced at trial, including:

> 1.   the level of education and experience of persons working in the field;
>
> 2.   the types of problems encountered in the field; and
>
> 3.   the sophistication of the technology.

Second, you must decide the scope and content of the prior art.  In order to be considered as prior art to the '837 Patent, these references must be reasonably related to the claimed invention of that patent.  A reference is reasonably related if it is in the same field as the claimed invention or is from another field to which a person of ordinary skill in the field would look to solve a known problem.

Third, you must decide what differences, if any, existed between the claimed invention and the prior art.

Finally, you should consider any of the following factors that you find have been shown by the evidence:

> 1.   commercial success of a product due to the merits of the claimed invention;
>
> 2.   a long felt need for the solution provided by the claimed invention;
>
> 3.   unsuccessful attempts by others to find the solution provided by the claimed invention;
>
> 4.   copying of the claimed invention by others;
>
> 5.   unexpected and superior results from the claimed invention;
>
> 6.   acceptance by others of the claimed invention as shown by praise from others in the field or from the licensing of the claimed invention;
>
> 7.   other evidence tending to show nonobviousness;
>
> 8.   independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it; and
>
> 9.   other evidence tending to show obviousness.

The presence of any of factors 1-7 may be considered by you as an indication that the claimed invention would not have been obvious at the time the claimed invention was made, and the

Case No. 5:14-cv-03750-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

United States District Court
For the Northern District of California

1
2

presence of the factors 8-9 may be considered by you as an indication that the claimed invention would have been obvious at such time.  Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on whether the claimed invention would have been obvious is up to you.

3
4
5
6
7
8
9
10
11
12
13

A patent claim composed of several elements is not proved obvious merely by demonstrating that each of its elements was independently known in the prior art.  In evaluating whether such a claim would have been obvious, you may consider whether the alleged infringer has identified a reason that would have prompted a person of ordinary skill in the field to combine the elements or concepts from the prior art in the same way as in the claimed invention.  There is no single way to define the line between true inventiveness on the one hand (which is patentable) and the application of common sense and ordinary skill to solve a problem on the other hand (which is not patentable).  For example, market forces or other design incentives may be what produced a change, rather than true inventiveness.  You may consider whether the change was merely the predictable result of using prior art elements according to their known functions, or whether it was the result of true inventiveness.  You may also consider whether there is some teaching or suggestion in the prior art to make the modification or combination of elements claimed in the patent.  Also, you may consider whether the innovation applies a known technique that had been used to improve a similar device or method in a similar way.  You may also consider whether the claimed invention would have been obvious to try, meaning that the claimed innovation was one of a relatively small number of possible approaches to the problem with a reasonable expectation of success by those skilled in the art.  However, you must be careful not to determine obviousness using the benefit of hindsight; many true inventions might seem obvious after the fact.  You should put yourself in the position of a person of ordinary skill in the field at the time the claimed invention was made and you should not consider what is known today or what is learned from the teaching of the patent.

Case No. 5:14-cv-03750-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

## 18. DAMAGES—BURDEN OF PROOF

I will instruct you now about the measure of damages. By instructing you on damages, I am not suggesting which party should win on any issue. If you find that SOLiD or Reach infringed any valid claim of the '837 Patent, you must then determine the amount of money damages to award to Corning to compensate it for the infringement.

The amount of those damages must be adequate to compensate Corning for the infringement. A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty. You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

Corning has the burden to persuade you of the amount of its damages. You should award only those damages that Corning more likely than not suffered. While Corning is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty. Corning is not entitled to damages that are remote or speculative.

Case No. 5:14-cv-03750-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

## 19. CALCULATING DAMAGES IN CASES OF INDUCEMENT OR CONTRIBUTORY INFRINGEMENT

In order to recover damages for induced infringement, Corning must either prove that the accused product necessarily infringes the patents in suit or prove acts of direct infringement by others that were induced by the accused infringer.  Because the amount of damages for induced infringement is limited by the number of instances of direct infringement, Corning must further prove the number of direct acts of infringement of the patents in suit, for example, by showing individual acts of direct infringement or by showing that a particular class of products directly infringes.

In order to recover damages for contributory infringement, Corning must either prove that the accused product necessarily infringes the '837 Patent, or prove acts of direct infringement by others to which SOLiD or Reach made a substantial contribution.  Because the amount of damages for contributory infringement is limited by the number of instances of direct infringement, Corning must further prove the number of direct acts of infringement of the '837 Patent, for example, either by showing individual acts of direct infringement or by showing that a particular class of products directly infringes.

1

**20. LOST PROFITS—GENERALLY**

2
In this case, Corning seeks to recover lost profits for some of SOLiD's and Reach's sales of infringing products, and a reasonable royalty on the rest of the sales.

3
To recover lost profits for infringing sales, Corning must show that but for the infringement there is a reasonable probability that Corning would have made sales that SOLiD and Reach made of the infringing product.  Corning must show the share of SOLiD's or Reach's sales that it would have made if the infringing product had not been on the market.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 5:14-cv-03750-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

United States District Court
For the Northern District of California

# 21. LOST PROFITS—FACTORS TO CONSIDER

Corning is entitled to its own lost profits if it proves all of the following:

1.   that there was a demand for the patented products;

2.   that there were no acceptable, non-infringing substitutes for the products for which Corning seeks lost profits, or, if there were, the number of sales made by SOLiD or Reach that Corning would have made despite the availability of any acceptable non-infringing substitutes.  An acceptable non-infringing substitute may involve modifying the accused product to avoid infringement by adding an available alternative or by removing the patented feature from the product altogether.

An alternative may be considered available as a potential substitute even if it was not actually on sale during the infringement period.  Factors suggesting that the alternative was available include whether the material, experience and know-how for the alleged substitute were readily available and potential customers would have believed that the alternative was an acceptable substitute.  Factors suggesting that the alternative was not available include whether the material was of such high cost as to render the alternative unavailable, whether potential customers would have believed that the alternative was an acceptable substitute and whether SOLiD or Reach had to design or invent around the patented technology to develop an alleged substitute;

3.   that Corning had the manufacturing and marketing capacity to make any infringing sales actually made by the infringer and for which Corning seeks an award of lost profits; and

4.   the amount of profit that Corning would have made if SOLiD or Reach had not infringed.

Case No. 5:14-cv-03750-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

## 22. LOST PROFITS—AMOUNT OF PROFIT

Corning may calculate its lost profits on lost sales by computing the lost revenue for sales it claims it would have made but for the infringement, and subtracting from that figure the amount of additional costs or expenses it would have incurred in making those lost sales (such as cost of goods, sales costs, packaging costs, and shipping costs).  Certain fixed costs that do not vary with increases in production or scale, such as taxes, insurance, rent, and administrative overhead, should not be subtracted from Corning's lost revenue.

Case No. 5:14-cv-03750-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 23. LOST PROFITS—MARKET SHARE

One way Corning may prove the number of sales it would have made if the infringement had not happened is to prove its share of the relevant market excluding infringing products.  You may award Corning a share of profits equal to that market share.

In deciding Corning's market share, you must decide which products are in Corning's market. Products are in the same market if they are sufficiently similar to compete against each other.  Two products are sufficiently similar if one does not have a significantly higher price than or possess characteristics significantly different than the other.

Case No. 5:14-cv-03750-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

## 24. REASONABLE ROYALTY—ENTITLEMENT

If Corning has not proved its claim for lost profits, or has proved its claim for lost profits for only a portion of the infringing sales, then Corning should be awarded a reasonable royalty for all infringing sales for which it has not been awarded lost profits damages.

United States District Court
For the Northern District of California

## 25. REASONABLE ROYALTY—DEFINITION

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention.  This right is called a "license."  A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder and the alleged infringer taking place at the time when the infringing activity first began.  In considering the nature of this negotiation, you must assume that the patent holder and the alleged infringer would have acted reasonably and would have entered into a license agreement.  You must also assume that both parties believed the patent was valid and infringed.  Your role is to determine what the result of that negotiation would have been.  The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

It is up to you to decide what type of royalty is appropriate here based on the evidence you heard.

Case No. 5:14-cv-03750-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## 26. REASONABLE ROYALTY—RELEVANT FACTORS

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began.  Some of the factors that you may consider in making your determination are:

1.   The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

2.   The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

3.   The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

4.   The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

5.   The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

6.   The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

7.   The duration of the patent and the term of the license.

8.   The established profitability of the product made under the patents, its commercial success, and its current popularity.

9.   The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

10. The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

11. The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

13. The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14. The opinion and testimony of qualified experts.

15. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—

Case No. 5:14-cv-03750-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.  You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.  The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place at a time prior to when the infringement began.

Case No. 5:14-cv-03750-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**27. DATE OF COMMENCEMENT**

Damages that Corning may be awarded commence on the date that SOLiD and Reach are determined to have infringed and were notified of the '837 Patent by Corning.  The Court has concluded that the date of commencement is May 23, 2014.  You may not award damages for infringement before that date.

Case No. 5:14-cv-03750-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

**28. DUTY TO DELIBERATE**

When you begin your deliberations, you should elect one member of the jury as your presiding juror.  That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so.  Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should.  Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Case No. 5:14-cv-03750-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

## 29. COMMUNICATION WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through Mr. Rivera, signed by your presiding juror or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court.  If you send out a question, I will consult with the parties before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note to the court.

Case No. 5:14-cv-03750-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

**30. RETURN OF VERDICT**

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

**SO ORDERED.**

Dated: October 13, 2015

_____
PAUL S. GREWAL
United States Magistrate Judge

Case No. 5:14-cv-03750-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS